## McCarthy *versus* Commonwealth *ex rel.* Griffiths *et al.*

1. The Act of June 22d, 1883 (P. L., 139), directing that, in counties the population of which exceeds 100,000, and is less than 150,000, the fees, which formerly belonged to the county officers, shall be turned over to the county Treasurer, that the officers be compensated by salaries and imposing various new duties upon the Auditors in the counties to which it relates, is unconstitutional and void, being in contravention of Art. III, sec. 7, of the Constitution which provides that, "the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts; creating officers or prescribing the duties in counties, cities, boroughs, townships, election or school districts."

2. The power of the legislature to classify counties by population for the purposes of legislation, has, in special instances, been recognized by the courts, upon the assumption that counties having a small population may have a larger one in the future. The above Act, however, *is an attempt to legislate directly for certain counties (there being only four falling within the limits mentioned in said Act) selected from all others, to be ascertained by their population rather than by their name.* This is local or special legislation within the meaning of the Constitutional prohibition.

May 22d, 1885. Before MERCUR, C. J., GORDON, TRUNKEY and GREEN, JJ. PAXSON, STERRETT and CLARK, JJ. absent.

ERROR to the Court of Common Pleas of *Schuylkill county :* Of January Term 1885, No. 455.

Mandamus, by the Commonwealth of Pennsylvania at the relation of Thomas W. Griffiths, Frank M. Bertram and John Haley, Auditors of Schuylkill county, against William J. McCarthy, Prothonotary of said county, to compel him to file copy of his fee account.

The petition of the relators averred as follows: That they were duly elected Auditors for said county, were qualified according to law and entered upon the duties of their office on January 5th, 1885. That upon the same day William J. McCarthy, who had been elected to the office of Prothonotary, entered upon the performance of the duties of his said office. That the legislature had passed an Act, approved on June 22d, 1883, entitled, "An Act fixing the salaries of county officers in counties containing over one hundred thousand and less than one hundred and fifty thousand inhabitants, and requiring the payment of the fees of such officers into the respective county treasuries," which said Act provided that all fees received by each and every county officer in all counties containing such population shall belong to the county

in and for which said officers are severally elected or appointed, except such taxes and fees as are levied for the state, " and none of said officers shall receive for his own use or for any use or purpose whatever, except for the use of the proper county, or for the state, as the case may be, any fees for any official services whatever."

By the second section of said Act, it is made the duty of each of said officers to keep a special account book, the form of which shall be prescribed by the county Auditors in counties where there is no Controller, in which shall be entered all moneys received for fees and all moneys earned, with the date, and from whom or for what received or due, and on the first Monday of every month each of said officers is required to pay to the Treasurer of the proper county all fees so received during the preceding month, taking duplicate receipts therefor, one of which shall be deposited with the county Auditors together with a transcript in detail of his fee account book or books for the preceding month to which he shall make oath or affirmation before the county Auditors. It is further made the duty of the county Auditors to meet on such first Monday of each month to receive such returns, to verify them and to file said receipt and transcript in the office, and to charge the county Treasurer with the money for fees so paid in.

By the fifth section of this Act, it is provided that " all county officers, within the counties to which this Act applies, whether elected by the people or appointed according to law, and their several deputies and clerks shall be paid for their services by fixed and specific salaries, which shall be a charge upon the treasury of the county to which each shall respectively belong . . . and said salaries shall be paid monthly, except as herein otherwise provided, on the second Monday of the month succeeding that in which his services were rendered; but no warrant shall be drawn for the payment of any of said officers, his deputies or clerks, who shall not have filed the receipt and transcript provided for in this Act."

The petition averred, further, that in pursuance of this Act, the petitioners on the first Monday of February, attended the court house in Pottsville, to receive the returns of the county officers as required by the said Act. That the said William J. McCarthy, Prothonotary, as aforesaid, though requested so to do, neglected and refused to file with the said Auditors a transcript in detail of his fee account book or books for the preceding month, as required by the said Act of Assembly; and that owing to this refusal, the petitioners were unable to examine and verify the accounts of the said Prothonotary.

The petitioners therefore prayed the court to issue a mandamus to the said William J. McCarthy, commanding him to file

a transcript in detail of his fee account book or books for the month of January, A. D. 1885.

The answer of McCarthy admitted the facts of the above petition, but claimed that the Act of June 22d, 1883, upon which it was based, was void and of no effect for the following reasons: (1) Because it is in violation of Art III., sec. 7 of the Constitution. (2) Because it is in violation of Art III., sec. 3 of the Constitution. He therefore prayed judgment against the petitioners and that he recover his costs.

The court, PERSHING, P. J., made absolute the rule and granted the writ of mandamus. Whereupon respondent took this writ, assigning for error this action of the court.

*H. M. North* and *B. Bryson McCool* (*S. H. Kaercher* with them), for plaintiff in error.—The Act of June 22d, 1883, is clearly a local or special law, affecting as it does only four counties, and such legislation is forbidden by the Constitution, Art. III., sec. 7 : Davis *v.* Clark, 10 Out., 377.

The legislature has power to classify for the purpose of legislation, as has been decided in the cases of Wheeler *v.* Philadelphia, 27 P. F. S., 338 and Kilgore *v.* Magee, 4 Norris, 401, but the Act of June 22d, 1883 does not classify all the counties, it applies to only four; it makes no provision for counties that may hereafter have a population of not less than 100.000 nor more than 150,000 ; Commonwealth *v.* Patton, 7 Norris, 260; Scowden's Appeal, 15 Id., 425.

The title to this bill expresses two subjects, namely, "fixing salaries of county officers" and "requiring payment of fees" "into county treasuries," while the Act itself contains other subjects which are not expressed at all in the title—for instance; It prescribes and enlarges the duties of county auditors creates a new class of misdemeanors by county officers, enlarges the offense of perjury, it creates a new tribunal, etc. Hence the Act is void as in conflict with Art III., sec. 3 of the Constitution. Montgomery *v.* Commonwealth 10 Norris, 125; Topeka *v.* Gillett, 5 Am. & Eng. Corp. Cases, 290.

*S. A. Garrett* (*W. J. Whitehouse* with him) for defendant in error.—The case mainly relied on by the plaintiff in error to show the unconstitutionality of this Act is the case of Davis *v.* Clark. But is there any similarity between the two Acts? The one under discussion in this case is for purely governmental purposes, the necessity for which is recognized by the fundamental law itself, while the other simply seeks to give mechanics of one section of the Commonwealth privileges not possessed by those residing in other sections, and in the lan-

guage of Judge Paxson, Scowden's Appeal, 15 Norris, 425, "It requires but a glance at the Act to see that it is an attempt to evade the Constitution. It is special legislation under the attempted disguise of a general law."

That the legislature has the power to classify cities and counties by population for purposes of legislation has been declared in Wheeler *v.* Philadelphia, 77 Penna. St. R., 338, and sustained in Kilgore *v.* Magee, 85 Penna. St., 401.

Mr. Justice Gordon delivered the opinion of the court, October 5th, 1885.

We have no doubt but that the Act under consideration, the Act of June 22d, 1883, falls within the inhibition of the seventh section, of the third article, of our present constitution. "The General Assembly shall not pass any local or special law, . . . . . regulating the affairs of counties, cities, townships, wards, boroughs or school districts." In the Act cited the attempt has been made to regulate, in certain and very important particulars, the affairs of counties, the population of which exceeds one hundred thousand, and is less than one hundred and fifty thousand. Fees which heretofore belonged to county officers, are turned over to the county treasuries; these officers are compensated by salaries; some of them are made county collectors, and new duties and new oaths are imposed upon them. In it are contained novel prescriptions with reference to commissioners, auditors, directors of the poor, etc.

But by what process of reasoning is this legislation, which has selected for its operation three or four counties from all those composing the Commonwealth, to be justified? Is the justification to be found in the well-recognized legislative power of classification? We think not. It is admitted that classification, even where not specially recognized by nature, custom, the laws of trade, or the constitution, must, in certain cases, be adopted *ex necessitate*, as in the case of cities, under the Act of the 23d of May, 1874: Wheeler *v.* Philadelphia, 27 P. F. S., 338, and Kilgore *v.* Magee, 4 Nor., 401. General legislation for all the cities of the Commonwealth as a single class, having been regarded as impossible, the legislature first divided these municipalities into several distinct classes, and then provided laws and regulations adapted to each class. This, as we have seen, was recognized as legitimate and proper.

There is here, however, a new and complete classification, and not a mere cutting out of one or more cities, designated by population, from the general class, and in this the Act of 1874 is distinguishable from that of 1883, in which no general

[McCarthy v. Commonwealth.]

classification is attempted, but a special legislation adopted for certain counties selected from all others, and to be ascertained by their populations rather than by their names. Under the rulings in Davis v. Clark, 10 Out., 377; Commonwealth v. Patton, 7 Norris, 260, and Scowden's Ap., 15 Id., 425, this is not allowable.

If, indeed, such legislation were to be recognized as legitimate, vain would be the constitutional prohibition of local or special laws. But little ingenuity in the way of so called classification would be necessary in order to isolate every single county, borough, ward, township and school district in the state, and provide for each its own local code.

Moreover, as by the constitution itself, the counties, with reference to the fees of their officers, have been classified, we think a further attempt in that direction not permissible. " The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive into the treasury of the county or state as may be directed by law. In counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary, and the salaries of any such officer, and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him." It follows from this provision that, in counties having a population over one hundred and fifty thousand, the officers thereof must be salaried, thus, in this class, abolishing, in this particular, not only all legislative discretion, but also all local statutes, whilst as to the second class, that is, all counties having a less population than that above stated, local regulations are allowed to remain until otherwise ordered by the General Assembly. Where then is the special necessity for the subdivision of this second class ? And why cannot the compensation of all the officers of this subdivision be paid either by fees or salary as the legislature may determine? It is true, that a general salary law would operate unequally and unjustly, but the same objection does not apply to the system of compensation by fees, so that the necessity for the Act under consideration is not apparent. By this Act the legislature seems to have undertaken to correct, or modify, the provisions of the constitution.

That instrument provides, that in counties having a population of over one hundred and fifty thousand their officers shall be salaried, and the attempt is here to simply enlarge this class by adding to it all counties exceeding in population one hundred thousand. How can this be regarded as anything but special legislation ? The county of Schuylkill, and others

of like population, were left by the framers of the organic law, in the second class, and they had the right to expect that they could be affected by no law not common to that class, and yet they now find themselves subjected to regulations not common to their own class, but to one from which the constitution had excluded them.   Thus all protection against local legislation is cut off, and the people of a county, ward or borough may have such legislation imposed upon them without even the notice that the recitation of a name would afford.   Than this the old system was much the better, for under it the governor of the state, or a member of the legislature, might know what a bill was territorially intended to embrace, but under the plan adopted in the case in hand, the promoters of a statute may do their work in the dark, and leave those to be affected thereby to discover it when too late for correction. We cannot agree that our constitution shall be thus trifled with, or be made the instrument for the promotion of the very evil it was intended to prevent.

The judgment of the court below is reversed.