## HENRY A. REID v. JOHN SMOULTER, JR.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 18, 1889—Decided October 7, 1889.
[To be reported.]

1. As a general rule an amendatory statute declaring that a prior statute shall read in a particular way, operates to repeal all provisions of the prior statute not incorporated into the amendment, but if such operation would produce a result transcending constitutional authority, this rule of construction will not be applied.

2. When, in compliance with a mandate of the constitution, the legislature has enacted a statute erecting a certain court and providing for the appointment of its officers, it is afterwards beyond the legislative power wholly to undo its work by abolishing such court, or such offices connected therewith as the constitution provides for.

3. Under § 22, article V. of the constitution, the legislature might have power to restore the Orphans' Court jurisdiction to the Common Pleas judges in a county falling below 150,000 in population, but even if so, it would clearly be incompetent to abolish the separate Orphans' Court in such a county, or its offices, without such a restoration of jurisdiction.

4. When the legislature has passed an act fixing the salary of an office established by the constitution, such act may not afterwards be repealed without the substitution of another provision in its stead; because to abolish the salary wholly is virtually to remove the officer, which is not within the legislative power to accomplish.

5. The act of April 13, 1887, P. L. 22, amending § 5, act of May 19, 1874, P. L. 206, is not in conflict with §§ 3 and 7, article III. of the constitution, as being defective in its title or local or special in its operation, although such amendatory act does not repeal or affect the original act, so far as relates to Luzerne county.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 422 January Term 1889, Sup. Ct.; court below, No. 959 October Term 1888, C. P.

On October 4, 1888, Henry A. Reid presented his petition, averring that he was the duly appointed assistant clerk of the Orphans' Court of Luzerne county; that John Smoulter, Jr., was the treasurer of said county; that there was due and owing to the petitioner, as assistant clerk of said Orphans' Court, one quarter's salary amounting to $450, a duly attested and countersigned bill for which had been presented by the petitioner to said treasurer; that said treasurer refused to pay said bill, alleging that the act of April 13, 1887, P. L. 22, fixing the salaries of assistant clerks of the Orphans' Courts, repealed and supplanted the act of May 19, 1874, P. L. 206, under which the petitioner claimed payment of said bill; that at the time of the passage of said act of April 13, 1887, the county of Luzerne, as then organized and constituted, contained according to the U. S. Census of 1880 a population of 133,065;—praying for a mandamus commanding the said treasurer to pay to the petitioner the amount of his said bill, or for a rule upon him to show cause why such a mandamus should not be issued.

A rule to show cause why a mandamus should not issue, as prayed for, was granted and issued, in response to which John Smoulter, Jr., filed an answer admitting all the facts alleged in the petition, but denying that as matter of law the office of assistant clerk of the Orphans' Court existed in Luzerne county, for the reason that said office was abolished by the act of April 13, 1887, P. L. 22.

After argument the court, RICE, P. J., discharged the rule, filing the following opinion:

The relator was duly appointed assistant clerk of the Orphans' Court at the beginning of the term of office of the present register of wills, in January, 1888. The defendant is the county treasurer. The only question presented for decision is whether the provisions of the act of May 19, 1874, P. L. 206, relating to the salary of the assistant clerk of the Orphans' Court, are in force in this county. We say that is the only

question; for, while it is suggested in the answer that the office was abolished by the act of April 13, 1887, P. L. 22, yet, as the constitution expressly authorizes the register of wills, and ex-officio clerk, in all counties where a separate Orphans' Court is established, to appoint such an assistant, the proposition is not insisted upon by the defendant's counsel.

At the time of the adoption of the constitution, the only counties having over 150,000 inhabitants were Philadelphia, Allegheny and Luzerne. In obedience to the mandate of the constitution, the legislature established a separate Orphans' Court in each of said counties, naming them: Act May 19, 1874, P. L. 206. The fifth section of the act was as follows: " The register of wills of each of the counties of Philadelphia, Allegheny and Luzerne, shall be clerk of such court, and subject to its directions in all matters pertaining to his office ; he may appoint assistant clerks, but only with the consent and approval of said court, not exceeding . . . . . one in the county of Luzerne, who shall receive annual salaries, payable quarterly by the treasurer of said respective counties, as follows, to wit: . . . . . which salaries shall be paid upon bills attested by said register and countersigned by a judge of said court." Lackawanna county was taken from Luzerne in 1878, and according to the census of 1880, which for present purposes must be taken as the standard, we must assume that the county now has less than 150,000 inhabitants: Luzerne Co. v. Glennon, 109 Pa. 564.

The act of April 13, 1887, P. L. 22, amends the fifth section of the act of 1874, reciting the section at length, " so as to read: Section 5. The register of wills of each and every county containing over one hundred and fifty thousand inhabitants, in which a separate Orphans' Court is or may be hereafter established, shall be clerk of such Orphans' Court and subject to its directions in all matters pertaining to his office; and he may appoint assistant clerks, but only with the consent and approval of said court, who shall receive annual salaries payable monthly by the treasurer of said respective counties as follows, to wit: The first assistant, two thousand dollars ; the second assistant, eighteen hundred dollars ; the third assistant, twelve hundred dollars ; and all other assistants one thousand dollars ; which salaries shall be paid out of the fees of said

office paid into the treasury of the county, upon bills attested by said register and countersigned by a judge of said court."

This form of legislation has been very frequently followed in Pennsylvania since the adoption of the constitution of 1874, and is in strict compliance, not only in letter but also in spirit, with the section of the article on legislation which provides that "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

It will be well to give a moment's consideration to the purpose of this provision regulating the mode of amending statutes. In a leading case upon the subject Judge COOLEY says : "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section, which was only referred to but not published, was well calculated to mislead the careless as to its effect, was perhaps, sometimes drawn in that form for the express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation : " People v. Mahoney, 13 Mich. 497. The same eminent jurist, in his work on Constitutional Limitations, says : " If this is a correct view of the purpose of the provision, it does not seem to be at all important to its accomplishment that the old law should be republished, if the law as amended is given in full with such reference to the old law as will show for what the new is substituted : " p. 151. Again he says : " The provision is fully complied with in letter and spirit, if the act or section revised or amended is set forth and published as revived or amended, and anything more than this only tends to render the statute unnecessarily cumbrous."

In amending the act under consideration the legislature exercised extreme care. The section intended to be amended is not merely designated by its number, but is fully recited. The amendatory act changes certain clauses and omits others,

but in order to make it perfectly clear how the section shall read, as amended, it is set forth at length. The legislature well understood the purpose of the constitutional provision, and manifestly intended to conform to its plain requirements. This being so, there can be no doubt of their intention to repeal all portions of the section amended, which are omitted from the amendatory act.

This conclusion does not rest on our individual judgment but is declared to be the settled rule by the text writers, and is sustained without exception by the decisions of all the courts of last resort in which the question has been raised. Mr. Bishop says : " An amendment of a statute, declaring that it shall read in a particular way, repeals all provisions not retained in the altered form : " Bish. Written Law, 152. Mr. Endlich in his valuable work recently published, says : " It is perfectly clear, that, as to all matters contained in the original enactment, and not incorporated in the amendment, the latter must be held to have the effect of a repeal : " Endlich on Statutes, § 196. These propositions are fully brought out by the following cases : Blakemore v. Dolan, 50 Md. 194 ; People v. Young, 38 Ill. 490 ; Ely v. Holton, 15 N. Y. 595 ; Moore v. Mansert, 49 N. Y. 333 ; People v. Supervisors, 67 N. Y. 109 (23 Am. Rep. 94) ; Barret v. Woodburey, 40 Vt. 266 ; State v. Ingersoll, 17 Wis. 651 ; Goodman v. Oshkosh, 31 Wis. 127 ; Chapin v. Crusee, 31 Wis. 209. Cases from other states to the same effect may be found in the digests, but we have not been able to examine the reports ; therefore we do not cite them.

We conclude that the provisions of the fifth section of the act of 1874, relating to the salary of the assistant clerk of the Orphans' Court of Luzerne county, and payment of the same by the county were repealed by the act of 1887.

Subsequently, on the application of the petitioner, a re-argument was ordered, after the hearing of which the court, RICE, P. J., filed a second opinion, as follows :

When this case was first argued, the constitutionality of the act of 1887, was not questioned. The only question raised was, whether it repealed the fifth section of the act of 1874, as to Luzerne county. We held that it did, and the correctness of the conclusion, as the case was presented, is conceded. It

is now claimed that the act is unconstitutional for two reasons: (1) because it is special legislation; (2) because the title does not clearly express an intention to repeal the former act as to separate Orphans' Courts in counties containing less than 150,000 inhabitants. It has been requested, and is important, that a speedy decision of these questions be given. Therefore, we shall not undertake to follow the able argument of the relator's counsel, but briefly state our conclusions.

1. Article XII., § 1 of the constitution, provides that: "All officers whose selection is not provided for in this constitution, shall be elected or appointed as may be directed by law." As the constitution provides how assistant clerks of the Orphans' Court shall be appointed, legislation upon that subject was unnecessary: Article V., § 22. As we suggested in our former opinion, the relator's title to the office is derived from the constitution, and is not dependent on the act of 1874, or affected by the act of 1887.

2. We do not think the act of 1887 is unconstitutional, because special or local in its operation. The legislature had power to repeal the fifth section of the act of 1874, and, having repealed it, to enact a law relating to the salaries of assistant clerks in counties containing over 150,000 inhabitants only. The enactment of such a law would be but a reasonable exercise of the legislative power, necessary to carry out the provisions of the constitution relating to the salaries of county officers, and the payment of the same and of the salaries of their clerks, out of the fees earned in such counties: Article XIV., § 5. Such a law cannot be declared special or local, simply because it reiterates the general and self-executing provision of the constitution relating to the power and mode of appointment.

3. "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title:" Article III., § 1. The title of the act of 1887 reads as follows: "An act to amend the fifth section of [an act relating to the organization and jurisdiction of the Orphans' Court, and to establish a separate Orphans' Court in and for counties having more than one hundred and fifty thousand inhabitants, and to provide for the selection of judges thereof], approved May 19, 1874,"etc. The part within brackets is a transcript of the title of the act of 1874, and simply in-

cates the act to be amended, and not the subject matter of the amendment. If it had ended here, the title would certainly have not been misleading, and, perhaps, by the same literal construction adopted in State Line etc. R. Co.'s App., 77 Pa. 429, would have been sufficiently full. But it proceeds to indicate the section to be amended as follows : " as to appointment of assistant clerks of the said court and fixing the salaries of the same." Of what court? Clearly of the Orphans' Court. Whether an Orphans' Court is a separate court of record or not, its title is the same,—" the Orphans' Court." Strictly, the word " separate " is not a part of the title by which the court is designated, and in no sense can the words " in counties having more than one hundred and fifty thousand inhabitants " be so construed. The words, " the said court," are to be read as a part of the title of the officers whose appointment and salaries are to be regulated, which written out in full would be " assistant clerks of the Orphans' Court." The reference back, then, is to no particular Orphans' Court nor to the Orphans' Court of any particular class of counties, but to Orphans' Courts in general, and comprehends all such courts having assistant clerks.

But even if the reference be restricted to the Orphans' Courts established by the section to be amended, it is sufficiently comprehensive to include the Orphans' Court of this county. We do not say that the title, upon a careless reading, might not be construed otherwise, but we think the interpretation we have given the more natural one, and the constitutional provision under consideration was not intended to entirely obviate the necessity for vigilance. It was proposed in the convention of 1838, and rejected because it was feared it would render legislation too difficult and uncertain and lead to litigation. " It will not do therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title, as it comes before us, a reasonable interpretation, ut res magis valeat quam pereat. If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. It need not be an index to the contents, as has often been said:" Allegheny County Home's Case, 77 Pa. 77. Judged by this rule we think this title sufficiently full and not misleading, and finding no constitutional

objection to the act we must sustain it. If the legislation works temporary inconvenience, as we think it does in this case, the power to correct it by additional or amendatory legislation is with the legislature, and they will undoubtedly exercise it if appealed to and shown the operation of the present law.

The rule is discharged.

The petitioner then took this writ, specifying that the court erred:

1. In rendering judgment in favor of the defendant.

2. In deciding that the act of 1887 repealed the act of 1874 as to Luzerne county.

3. In holding that said act of 1887 was not obnoxious to the constitutional prohibition of special legislation.

*Mr. John McGahren,* for the plaintiff in error:

1. The court below, by a highly technical rule of construction, never yet recognized or adopted in this court, held that so much of the act of 1874 as was not embodied in the amendatory section of the act of 1887, was repealed, and therefore, although the office of assistant clerk still existed in Luzerne county, yet as the act of 1887 made no provision for his salary, he must look to the register of wills for his compensation. Plainly, the purpose of the act of 1887 was not to disturb the provision of the act of 1874 for the salary of the assistant clerk in Luzerne county, but simply to increase the salary and number of the assistant clerks in counties of more than 150,000 population. A statute revising the subject matter of a former one, operates to repeal the former only to the extent to which its provisions are revised and supplied: Commonwealth v. Cromley, 1 Ash. 181: Bartlet v. King, 12 Mass. 545. Implied repeals are not favored: Erie v. Bootz, 72 Pa. 196. Statutes in pari materia are to be construed together: Keeling's Road, 59 Pa. 358. The second section of the act of 1887 would be nugatory if the amending section operated per se as a repeal of the act of 1874. This is not to be presumed. The rule of construction applied by the court below is therefore inapplicable: Lewis v. Stout, 12 Wis. 235; Endlich on Statutes, § 203. A later repugnant statute repeals former statutes only so far as the repugnance extends: Barber's Election, 86 Pa. 392.

2. Both these acts must be taken together as enforcing and interpreting each other, in accordance with the rule laid down in Endlich on Statutes, § 40, in order to render the later one valid and effective. The act of 1874 was in strict conformity with the requirements of the constitution, but, standing by itself, that of 1887 will not bear the test which has been applied to the act of 1874, as both the title and body of it expressly restrict its operation to counties having 150,000 inhabitants. It does not profess to classify the counties of the state, but embraces within its scope only two of the counties of the commonwealth. A statute legislating for the separate Orphans' Courts of counties having 150,000 inhabitants and increasing the salaries of assistant clerks therein, and discriminating by singling out the case of Luzerne county and abrogating all provision for the salary of the assistant clerk in that county, is special legislation in the legal acceptation of that term. An amendatory act having a local effect is as repugnant to the constitution as if it were an original act. The legislature might suspend the operation of the fifth section of the act of 1874 throughout the state, but such suspension cannot be made for Luzerne county alone : Morrison v. Bachert, 112 Pa. 330; Davis v. Clark, 106 Pa. 385; Scowden's App., 96 Pa. 425; McCarthy v. Commonwealth, 110 Pa. 243; Weinman v. Pass. Ry. Co., 118 Pa. 192.

*Mr. William S. McLean*, for the defendant in error :

1. The act of 1887 is not unconstitutional as being local or special legislation. The legislature had undoubted power to repeal § 5 of the act of 1874, so far as the officers' salaries are concerned, and the section enacted in 1887 in lieu of it simply carries out the provisions of § 5, article XIV. of the constitution. These provisions read in connection with § 22, article V. of the same instrument, clearly make assistant clerks of the separate Orphans' Courts officers under the organic law, and the act of 1887 is therefore not special or local, in a constitutional sense, because not relating to assistant clerks in counties not having separate Orphans' Courts. If it did not embrace all such separate courts, now or hereafter to be established in counties having over 150,000 inhabitants, it might be special, but it embraces all these. Luzerne county's population was

133,065 in 1880, and in legal contemplation was no greater when the relator was appointed to office : Luzerne Co. v. Glennon, 109 Pa. 564.

2. The subject of the act of 1887 is clearly expressed in its title. It is simply the manner of the appointment and the amount of compensation of assistant clerks of the separate Orphans' Courts in counties having a population in excess of 150,000. The title clearly gives notice of this and in nowise tends to avert inquiry into the contents of the act : Allegheny Co. Home's Case, 77 Pa. 77, Railroad Co.'s App., 77 Pa. 429. The amendment being germane to the subject matter of the original act, is sufficiently covered by a title containing a specific reference to the original act by its title, and declaring the new enactment to be an amendment thereto : In re Pottstown Borough, 117 Pa. 538 ; Craig v. Presb. Church, 88 Pa. 42.

3. The act of 1887 repealed the fifth section of the act of 1874, at least so far as relates to the salary of the assistant clerk in Luzerne county. Both the original section and the section as amended are published at length. Whatever of the former is omitted from the latter is therefore repealed. This doctrine has been fortified by the court below with a number of authorities. Both Bishop and Endlich state and accept it as law: Bishop's Written Law, 152; Endlich on Statutes, § 196. This method of amending laws has been pursued almost uniformly ever since the adoption of the present constitution, and the legislative practice is entitled to respect and weight as showing the construction placed by at least two co-ordinate departments of the government upon § 6, article III. of the constitution.

OPINION, Mr. JUSTICE CLARK :

The general rule laid down by the learned judge of the court below as to the effect of an amendatory statute, is undoubtedly correct. A statute amendatory of another, declaring that the former shall read in a particular way, must, in general, be held to repeal all provisions not retained in the altered form. All matters not incorporated into the amendment, the latter must be held to have repealed. The authorities referred to in the opinion of the court are full upon this point, and many more might be cited in support of this general rule of construction. But

assuming this, and that the amendatory section of the act of 1887 is actually merged in the original statute of 1874, a question arises, we think, upon the power of the legislature to repeal the provisions as to the salary of the assistant clerk of any separate Orphans' Court, duly established, without making any other provisions in that behalf.

The 22d section of the 5th article of the constitution provides that "in every county wherein the population shall exceed one hundred and fifty thousand, the general assembly shall, and in any other county may, establish a separate Orphans' Court, to consist of one or more judges, who shall be learned in the law ; which court shall exercise all the jurisdiction and powers vested in, or which may hereafter be conferred upon the Orphans' Courts; and thereupon the jurisdiction of the judges of the Courts of Common Pleas within such county, in Orphans' Court proceedings, shall cease and determine." It further provides that "in any county in which a separate Orphans' Court shall be established, the register of wills shall be clerk of such court, and subject to its directions in all matters pertaining to his office," and that "he may appoint assistant clerks, but only with the consent and approval of said court." By the 31st section of the Schedule, it was made the duty of the general assembly, at its first session, or as soon as may be after the adoption of the constitution, to pass such laws as might be necessary to carry the same into full force and effect.

At the time of the adoption of the constitution, the only counties of the commonwealth containing a population exceeding 150,000 were the counties of Philadelphia, Allegheny, and Luzerne; and in obedience to this mandate of the constitution, provision was made by the act of May 19, 1874, for the establishment of separate Orphans' Courts in each of the three counties named; the salaries of the clerk and of the assistant clerk were adjusted, and separate Orphans' Courts were thereupon duly organized under the constitution and laws of the commonwealth in the said several counties. The legislature in the passage of this act of May 19, 1874, simply complied with a command of the constitution, and thereby caused this provision of the constitution to come into effect. That act withdrew from the judges of the Court of Common Pleas of these respective counties the right to exercise the power of an Orphans' Court, and

vested these powers in an independent and exclusive jurisdiction. We think it would not have been competent for the legislature, by a repeal of this act, to defeat and set aside the constitutional tribunals thus established; for these courts, although put into actual operation by the legislature, were created by and now exist under the authority of the constitution itself. Having done what the constitution required, it would not have been in the power of the legislature wholly to undo it. The constitution itself set up this system of separate Orphans' Courts, and it is for the legislature to regulate and maintain, not to destroy it. The constitution is the paramount law; it is above legislatures and courts; what is therein ordained and established cannot be set aside by a simple act of legislation.

James McGreevy, Esq., the clerk of the Orphans' Court of Luzerne county, had an undoubted right, by and with the consent and approval of that court, to appoint Henry A. Reid the assistant clerk. This right was vested in him by the very terms of the constitution, and upon receiving the appointment and becoming duly qualified, Henry A. Reid was entitled to perform the duties of that office, and to receive the emoluments thereof. It will not be seriously contended that the legislature had any power to pass upon the necessity for the appointment, for this discretion is expressly committed to the clerk, who is to act with the consent and approval of the court. Nor will it be pretended that the assistant clerk might be removed from his office by a simple act of legislation; there was no power competent to remove him, save the tribunal which conferred the appointment.

If the legislature may repeal the act adjusting the salary, without making any further or other provision in that behalf, it may practically abolish the office. If the assistant clerk may thus be deprived of the office, the clerk of the court and the judge are both liable to the same fate, and in this way, that might be done by indirection which could not be done directly. It is true that the salary is a matter which, by the constitution, is submitted to the discretion of the legislature. In the exercise of that discretion, by the act of 1874 the salary was fixed at $1,500, and this rule of compensation will continue until, by some other statute, it is changed. The salary first fixed may perhaps be increased or diminished, subject to the

restriction of the 13th section of the 3d article of the constitution, as the legislature should from time to time see fit to provide, but to repeal the provision for a salary altogether, is to remove the clerk from his office.

It may be said, however, that after the organization of the separate Orphans' Court of Luzerne county, the county of Lackawanna was taken from Luzerne, thereby reducing its population, according to the census of 1880, below 150,000, and that in consequence thereof, although within the power of the legislature, the constitution did not require the continuance of a separate Orphans' Court in Luzerne county. It may be, that, in view of the reduction of the population, it would have been competent for the legislature to restore the jurisdiction to the judges of the Court of Common Pleas, in all matters pertaining to the Orphans' Court. We will decide that question when it arises, but the legislature did not do so. The judges of the separate Orphans' Courts, as constituted under the act of 1874, at the time of the passage of the act of 1887, were and still are the judges of the only court having jurisdiction of the estates of decedents and minors, in the county of Luzerne, and it would be clearly incompetent to repeal the act authorizing the payment of these salaries, or the salaries of the clerks of that court, without making any other provision for them, or to expel them from office, without cause, and without providing the means for the exercise of these powers by some other lawfully constituted tribunal.

The constitution creates the office of assistant clerk, and the legislature fixes the salary; but the latter cannot deprive him of his office by refusing him his salary. In Commonwealth v. Gamble, 62 Pa. 343, there was an effort to remove a judge from his office by doing away with his district; and, although the apportionment of the districts was clearly within the power and discretion of the legislature, yet it was held that as the judge held his office under the constitution the general assembly could not, by a mere legislative act, remove him from the exercise of the duties and jurisdictions attaching to his office. So in this case, the adjustment of the salary is given to the legislature, yet as the clerk derived his office directly from the constitution, the legislature cannot expel him from it by repealing the act fixing the amount of his salary.

We are of opinion that the act of April 13, 1887, P. L. 22, already referred to, is not in conflict with the constitution, because special or local in its operation. The constitution recognizes a class of counties, in each of which it is the duty of the legislature to establish a separate Orphans' Court, and the act plainly applies to all the counties of this class. Nor do we regard the title as defective; it is entitled " An act to amend the fifth section of an act relating to the organization and jurisdiction of the Orphans' Court, and to establish a separate Orphans' Court in and for counties having more than one hundred and fifty thousand inhabitants, and to provide for the election of judges thereof, approved May 19, 1874, as to appointment of assistant clerks of the said court, and fixing the salaries of the same," etc. Under all the cases, this is amply sufficient. We are clearly of opinion, however, that the act of 1874, so far as it relates to Luzerne county, is not repealed thereby.

> The order discharging the rule to show cause is therefore reversed, and judgment entered for the plaintiff below, that an alternative mandamus be issued. Record remitted for further proceedings.