## Commonwealth ex rel. v. Wert.

Constitutional law—Legislative power—Counties—Public officers—Fees— Acts of July 10, 1919, and July 11, 1923.

1. The Act of July 11, 1923, P. L. 1054, relating to county officers in counties of the fifth class, providing salaries and requiring the payment of fees into the county treasury, is constitutional.

2. The Act of July 10, 1919, P. L. 887, classifying counties into eight classes, is constitutional.

3. On an alternative writ of mandamus against the prothonotary of a county of the fifth class, requiring him to show cause why he should not pay the fees of his office to the county treasurer, a peremptory writ of mandamus should issue.

Alternative writ of mandamus. C. P. Lehigh Co., April T., 1924, No. 140.

H. B. Frederick, County Solicitor, and Dewalt & Heydt, for relator.

Aubrey, Steckel & Senger, for respondent.

RENO, P. J., and IOBST, J., Sept. 15, 1924.—The Commonwealth of Pennsylvania, at the instance of Orrin E. Boyle, Esq., the District Attorney of Lehigh County, presented a petition for an alternative writ of mandamus, which

Commonwealth ex rel. v. Wert.

recites that the defendant, Wilson A. Wert, is the prothonotary of said county and has been such since the first Monday of January, 1924; that the Act of July 11, 1923, P. L. 1054, provides that the fees in counties of the fifth class, of which Lehigh County, by virtue of the Act of July 10, 1919, P. L. 887, is a member, shall belong to the county; that, in lieu of said fees, the prothonotary shall be paid a salary of $4000 per annum; that the said Act of 1923 further provides that the prothonotary shall keep an account of the fees received by him according to a form prescribed by the county controller, and shall, on the first Monday of each month, deliver a transcript thereof to the county controller of the fees received during the preceding month and pay said fees to the county treasurer; that the county controller duly prescribed the forms of the special account, and that the county commissioners supplied Wilson A. Wert with account books conforming with the prescribed forms, and that the county treasurer notified Wilson A. Wert that he would be ready on Monday, Feb. 4, 1924, to receive the fees, etc., collected by Wilson A. Wert during the month of January, 1924; that, although the county treasurer was in attendance at his office during said Feb. 4, 1924, the said Wilson A. Wert did not make payment required of him, and on Feb. 8, 1924, the treasurer made a further demand for payment of the fees, with which the said Wilson A. Wert has not complied.

The answer of the defendant admits practically all the averments of the petition, but denies that the County of Lehigh is a county of the fifth class, because the general assembly had no power, under the Constitution, to classify the counties of the State. In short, without specifically setting forth the several averments of the answer, it is enough to say that the defendant alleges that the Acts of 1919 and 1923 are unconstitutional. To this the Commonwealth has demurred, and the case is before us upon the demurrer.

The Act of July 10, 1919, P. L. 887, commences with a preamble reciting: First, that a Supreme Court justice in a concurring opinion expressed the thought that counties had never been classified as had cities; second, that the general assembly has, for the purposes of legislation on particular subjects, classified counties without regard to any uniformity or general classification, and that many of these acts have been declared unconstitutional; and, third, that the great diversity in population and the physical condition of the several counties requires separate laws for their government and the regulation of their affairs. It then proceeds, in the 1st section, to enact that, for the purposes of legislation and the regulation of their affairs, the counties now existing shall be divided into eight classes: The first class constituting those having a population of 1,500,000 or more; the second class, those having a population of 800,000 and more, but less than 1,500,000; the third class, those having a population of 250,000 and more, but less than 800,000; the fourth class, those having a population of 150,000 or more, but less than 250,000; the fifth class, those having a population of 100,000 or more, but less than 150,000; the sixth class, those having a population of 50,000 or more, but less than 100,000; the seventh class, those having a population of 20,000 or more, but less than 50,000; and the eighth class, those having less than 20,000 inhabitants. The 2nd section enacts that the classification shall be fixed and ascertained by reference to the last preceding census, and the Governor is required to certify changes of classification to the several counties. The 3rd section provides that the affairs of counties shall, after the approval thereof, be legislated for and regulated by general laws applicable to all counties or to the classes created by the act, and that "all laws hereafter adopted by the general assembly for one or more of the classes herein fixed and appointed

shall be deemed to be general laws." The 4th section provides that acts in force prior to the passage of this act shall remain in force.

Classifying the counties according to the 1920 census, the first class comprises one (Philadelphia) county, the second class one (Allegheny) county, the third class three counties, the fourth class eleven counties, the fifth class seven counties, the sixth class sixteen counties, the seventh class eighteen counties, and the eighth class ten counties. The County of Lehigh is a county of the fifth class. For the complete classification, see Smull's Legislative Handbook, 1921-22 volume, page 484.

The Act of July 11, 1923, P. L. 1054, provides that (section 1) "in all counties of the fifth class, all fees, commissions and emoluments, limited and appointed by law to be received by each and every county officer whose salary is fixed by this act, . . . shall belong to the county, and it shall be the duty of each of said officers to exact, collect and receive all such fees . . . to and for the use of their respective counties," etc. Provision is made (section 2) for the keeping of accounts according to forms prescribed by the county controller of moneys received for fees, for the payment to the county treasurer on the first Monday of each month of the fees received during the preceding month, for the filing of a monthly transcript of the account, under oath, with the county controller, and for the audit thereof by the county controller. Penalties are provided (sections 3 and 4) for violations of the act. Salaries are provided (sections 5, 10 and 12) in lieu of fees for all the officers therein named, and a salary board is created (section 7) which is to determine the number of clerks and deputies each officer is to have and to fix their salaries, subject to appeal by aggrieved officers to the Court of Common Pleas. The salary of the prothonotary is fixed at $4000 per annum.

We are confronted, therefore, by a contention against the constitutionality of these statutes. In the consideration of this question we must keep constantly in mind the presumption of constitutionality attaching to all legislation and the admonition not to denounce legislation as violative of the Constitution unless that appears clearly, plainly and palpably and in such manner as to leave no doubt or hesitation on our minds: Sharpless *v.* Mayor, 21 Pa. 147. Or, to state the rule as recently laid down by Chief Justice Moschzisker: "When the constitutionality of an act of assembly is attacked, it is the duty of every judge, without regard to his opinion as to the necessity for the statute or its wisdom, to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible:" Com. *v.* Snyder, 279 Pa. 234.

Moreover, in the construction of our State Constitution, we must not forget that by its terms the people have conferred upon the general assembly all legislative power not therein expressly forbidden: Constitution, art. II, § 1; Lewis & Nelson's Appeal, 67 Pa. 153; Sharpless *v.* Mayor, 21 Pa. 147; Com. *v.* Hartman, 17 Pa. 118. From this it follows quite conclusively that, unless an act is clearly contrary to some express prohibition in the Constitution, it is valid: Com. *v.* McCloskey, 2 Rawle, 369; Russ *v.* Com., 210 Pa. 544. This principle applies very directly to the case at bar. Here, we are confronted with legislation which attempts to classify the counties of the State. The leading case upon that subject holds that there is no prohibition in the Constitution against the classification of municipalities, and that, in the absence of such prohibition, the power to classify, which existed before the adoption of the Constitution, remained a proper function of the legislative body after its adoption: Wheeler *v.* Philadelphia, 77 Pa. 338, 349.

Nor need we rely upon these expressions of general principles for the solution of the question before us. For it has been expressly held that the power to classify extends to counties as well as to other municipal and quasi-municipal and political sub-divisions of the State. In Lloyd *v.* Smith, 176 Pa. 213, it was said: "Local and special legislation is not necessarily unconstitutional, though the list of prohibited subjects is long and comprehensive. But even in regard to some of the prohibited subjects, such as the affairs of counties, cities, etc., it was very early found that there were such differences in situation, circumstances and requirements of the cities of the Commonwealth that classification with reference to their governmental machinery was of imperative necessity, and it was accordingly sustained, and the principle established that a law which does not exclude any one from a class, and applies to all the members of the class equally, is general. The same principle must make classification constitutional as to the other political and municipal divisions of the State when considered in their governmental capacity. Classification of counties is, therefore, as permissible as classification of cities, and the legislature may determine what differences in situation, circumstances and needs call for a difference of class, subject to the supervision of the courts as the final interpreters of the Constitution, to see that it is actually classification and not special legislation under that guise. The presumption is always in favor of the legislative command, and it must prevail unless clearly transgressing the constitutional prohibition. Classification of counties with reference to population has already been recognized by this court: Davis *v.* Clark, 106 Pa. 377, 385; McCarthy *v.* Com., 110 Pa. 243; Reid *v.* Smoulter, 128 Pa. 324, and perhaps other cases."

All this defendant concedes, and yet contends that the acts in question are unconstitutional. Without impugning the general power to classify, he argues that that power does not extend to the classification of counties for the purpose of fixing the compensation of officers thereof. As to this, he contends that the Constitution has itself classified the counties and that the general assembly is bound thereby. Reference is here made to article XIV, section 5, which provides that: "The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive into the treasury of the county or State as may be directed by law. In counties containing over 150,000 inhabitants, all county officers shall be paid by salary, and the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by or for him."

This, it is conceived, divides the counties into two classes, viz.: First, those containing a population of 150,000 or more; and, second, those containing a population of less than 150,000; and, further, that in counties of the higher population salaries are to be paid, and in those of the second class the officers are to be paid by fees. But we do not so read the provision. In the first place, the clause "the compensation of county officers shall be regulated by law" recognizes merely the general legislative power already vested in the general assembly by other provisions of the Constitution to regulate the compensation of officers. It is a recognition of power, a grant of power, not a negation of it nor a limitation upon it. By virtue of it, the general assembly is authorized to make any regulation concerning the compensation of county officers not directly prohibited by express provisions of the Constitution. Compensation is a word of general import and includes salary as well as fees, so that, unless restrained by some other provision in the Constitution,

Commonwealth ex rel. *v.* Wert.

the general assembly may regulate the compensation of county officers by providing either salaries or fees for them. The very next clause supports this view; for there it is provided that "*all* county officers who *are* or *may* be salaried shall pay all fees which they are authorized to receive into the treasury of the county or State as may be directed by law." Here, there is a distinct recognition of the legislative power to place all county officers upon a salary basis, in pursuance of the general power to regulate their compensation. The only injunction upon the general assembly herein contained, the only limitation upon that power, is that those officers who are salaried shall pay their fees into the county or State treasury, thus strongly sustaining the thought that all county officers may be salaried, provided their fees are paid into the public funds. Certainly, so far, there is no prohibition against the regulation of compensation of county officers by creating the salaries for them. Nor does the next clause limit the power of the legislature by providing that "in all counties containing over 150,000 inhabitants, all county officers shall be paid by salary." That is to say, that the general power to regulate compensation of county officers is limited to the extent that in counties of 150,000 population and more salaries must be provided for all county officers and none can be paid by fees. The limitation is against paying fees to officers of counties above 150,000 population, but there is no limitation, even by implication, against paying salaries to officers of counties of less population. As to the latter, the general power to regulate compensation by either salaries or fees survives. It survives because there is no express provision prohibiting the exercise of the general legislative power. The further limitation that "the salary of any such officer and his clerks, heretofore paid by fees, shall not exceed the aggregate amount of fees earned during his term and collected by and for him" applies, of course, only to officers of counties containing more than 150,000 population, and in nowise invalidates the conclusion already expressed.

It is true that there are some expressions in the cases that tend, at first blush, to support the defendant's contention, and these call for examination. There is, for instance, the case of McCarthy *v.* Com., 110 Pa. 243, where Justice Gordon, speaking for the Supreme Court, said: "Moreover, as by the Constitution itself the counties, with reference to the fees of its officers, have been classified, we think a further attempt in that direction is not permissible. . . . In counties having a population over 150,000, the officers thereof must be salaried; thus, in this class, abolishing in this particular not only all legislative discretion, but also all local statutes; whilst, as to the second class, that is, all counties having a less population than that above stated, local regulations are allowed to remain until otherwise ordered by the general assembly. Where, then, is the special necessity for the sub-division of this second class? And why cannot the compensation of all the officers . . . be paid either by salary or fees, as the legislature may determine? It is true that a general salary law would operate unequally and unjustly, but the same objection does not apply to the system of compensation by fees, so that the necessity for the act under consideration is not apparent. By this act the legislature seems to have undertaken to correct or modify the provisions of the Constitution."

The act under examination in that case fixed the salaries of officers in counties containing over 100,000 and less than 150,000. It was, therefore, subject to the objection that, as stated by Justice Gordon, it was not a complete classification, but a mere cutting out of one or more counties from the general class; "special legislation adopted for certain counties selected from

all others and to be ascertained by their population rather than by their names." Naturally, under rulings theretofore pronounced, the act was defective: Com. v. Patton, 88 Pa. 258; Scowden's Appeal, 96 Pa. 422; Davis v. Clark, 106 Pa. 377. That factor was decisive of the case, and, therefore, that which follows was largely, if not entirely, obiter dicta. Even so, there is little in the quotation contrary to our construction of the section. We have found that article XIV, section 5, does not prohibit the creation of a salary for county officers in counties of less population than 150,000. Justice Gordon says that in such counties "local regulations are allowed to remain unless otherwise ordered by the general assembly." There is no difference here except in the manner of expression. He suggests, too, that in counties of that class salaries or fees may be provided. That is precisely our construction. But, seeing that a general salary law will operate unequally and unjustly, he suggests that a system of fees is better. It is quite true that a general salary law applying alike to every county under 150,000 population would operate unequally and unjustly, but if the counties within that group are divided, salaries may be created which will operate for equality and justice. That is exactly the purpose of the Act of 1919. Thus reviewed, there is little in this case in contravention of our view.

The case of Morrison v. Bachert, 112 Pa. 322, is also cited for the proposition that, so far as the compensation of county officers is concerned, the counties have been classified by the Constitution and that further classification is not permissible. A careful study of the case does not sustain that view. In that case there was called into question the constitutionality of an act to appoint the fees of officers in counties containing more than 10,000 inhabitants and less than 150,000. It excluded perpetually from its operation all counties having a population of over 150,000, and did not include those containing less than 10,000 population. It was, therefore, unquestionably unconstitutional, and all further expressions were obiter dicta. Besides, as already emphasized, this case disclosed an attempt to classify counties in respect of the fees to be received by officers, and, even though it is regarded as condemning classification of counties for that purpose, it cannot rule an act classifying counties for general purposes of legislation (e. g., the Act of 1919 here drawn into question) nor an act which fixes salaries.

The same observation applies to Sieber v. Juniata County, 79 Pa. Superior Ct. 247. There, a statute providing a fee of $5 per day for attending court for prothonotaries of counties containing less than 70,000 inhabitants was attacked. The act was condemned. Manifestly, it was a local law, an attempt to provide a different basis for the payment of fees for some counties without including in its operation all those counties in which fees were an allowable basis of compensation. It cannot possibly rule this case; for here is involved a classification of all the counties of the State and the regulation of salaries instead of fees.

The comparatively recent case of Philadelphia County v. Sheehan, 263 Pa. 449, is also thought to support defendant's contention. The act in question provided that in every county containing a population of 1,500,000 and upward, the register of wills' salary shall be $10,000, and that in all such counties the register of wills shall pay into the county treasury all fees and commissions of every kind earned by him for services performed either for the county or State or otherwise. It was contended that thereby the Register of Wills of Philadelphia County was obliged to pay the commissions earned by him as the agent of the State in the collection of the collateral inheritance taxes into the county treasury. The Supreme Court held the act unconsti-

tutional because it applied to Philadelphia County only, and that there were no distinguishing features between Philadelphia County and all the other counties of the State, so that in Philadelphia the commissions should be paid into the treasury and elsewhere remain the property of the officer. This, it is quite obvious, is not our case, and the doctrine there announced cannot rule this case.

At this point we may summarize succinctly the conclusions which we have thus far reached. First, the Constitution does not prohibit the classification of counties for the purpose of legislating, with reference to their governmental machinery, separately, for the several classes into which they are divided, and, therefore, the Act of 1919 is not unconstitutional. Second, article XIV, section 5, does not deprive the legislature of its general power to regulate the compensation of all county officers, and, therefore, the legislature may provide salaries for officers of counties of less than 150,000 inhabitants. We come, then, to the major proposition in this case. If the legislature has the power to classify and also the power to create salaries for officers in counties of less than 150,000 inhabitants, may it classify such counties or must it fix a uniform salary applicable to all the officers of all counties of less than 150,000 population?

We think that, if it be conceded that salaries may be provided for officers in counties of less than 150,000 inhabitants, the very necessities of the case require classification of those counties as well as those of greater population. Certainly, no one would think that the Prothonotary of Pike County should receive as large a salary as the Prothonotary of Lehigh County. The difference in population will of itself account for a difference in the degree of time, attention and labor required of these officers in the performance of their duties. Justice Gordon, in McCarthy v. Com., 110 Pa. 243, suggested that an act which provided the same salary for officers in counties of less than 150,000 inhabitants must be unequal and unjust. It is precisely that view which sustains the Act of 1919 and that of 1923, for the latter is an act fixing salaries for the officers of one of the classes created by the former, leaving the other classes to be legislated for by other acts. We repeat, that if officers of counties of less than 150,000 population can be paid by salaries, then the very necessities of the case require that that class of counties be further classified to prevent injustice and inequalities. And the necessity for classification is its greatest justifying principle. "The underlying principle . . . is that classification, with the view of legislating for either class separately, is essentially unconstitutional unless a necessity therefor exists; a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes and imperatively demanding legislation for each class, separately, that would be useless or detrimental to the others:" Ayars's Appeal, 122 Pa. 266, 281.

But it is argued that, admitting the necessity for classification, there is no necessity for eight classes of counties, that the classification should have been confined to that outlined by the Constitution, or, at most, should not have exceeded three, as in the case of cities, or four, as in the case of school districts. But with this we may have little concern. "Legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional provisions. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis.

The test is not the wisdom, but the good faith in the classification:" Seabolt v. Commissioners, 187 Pa. 318. There is no reasonable ground upon which to question the good faith of the legislature in enacting either the Act of 1919 or the Act of 1923. The first is general in its application, in that all legislation relating to the affairs of counties shall thereafter be enacted with reference to the classes thereby created. The Act of 1923 fixes salary for the officers of one of these classes. Certainly, there is nothing upon the face of the acts which impugns the good faith of the legislature which enacted them. There is nothing which indicates the use of the power to classify as a guise for local and special legislation.

Moreover, it has never been thought heretofore that county officers of counties of less than 150,000 population could not be paid on a salary basis. Confining our attention for the moment only to those county officers mentioned in the Constitution, various acts of the legislature have provided salaries for commissioners, treasurers, controllers, sheriffs and district attorneys in counties of less than 150,000 population, and these counties have been classified for the purpose of equalizing the salaries. The power of the legislature to do this has never been questioned. Other officers created under the constitutional provisions authorizing "such others as may from time to time be established by law" have been placed upon a salary basis, e. g., probation officers, county solicitors, clerks to county commissioners and inspectors of weights and measures. The counties have also been classified for the purpose of fixing the salaries of these officers. We are not now saying that the legislative construction of the Constitution, as evidenced by its acts enacted in the past, is a safe guide for the judiciary, but we think that the uniform construction given to a provision of the Constitution by the general assembly, with the silent acquiescence of the people, are proper elements of a legal judgment thereon: Moers v. Reading, 21 Pa. 188. In this connection, it may be well to refer to the case of Goodwin v. Bradford, 248 Pa. 453, where an act creating the county office of inspector of weights and measures was under attack. It was there held that, although the minimum salary provision did not apply to counties having a population of 150,000 or less, it was, nevertheless, a proper classification and constitutional.

But we have said sufficient to express our conviction that these acts are constitutional. They meet every test prescribed by the appellate courts. The classification is reasonable. It is based upon real, not artificial, distinctions between the several counties. It relates to the governmental machinery of the counties. No county is excluded from it and all counties may ascend to higher classes or descend to lower classes as their populations change. Moreover, it is clearly necessary classification; for, without classification of the counties, any attempt to regulate the compensation of county officers upon a salary basis would create gross inequalities and manifest injustice. Hence, entertaining no reasonable doubt of the constitutionality of these statutes, we are obliged to sustain the demurrer and issue the peremptory mandamus.

Now, Sept. 15, 1924, the foregoing cause having been heard, it is ordered, adjudged and decreed:

(a) That the demurrer to the defendant's answer or return be and the same is sustained.

(b) That the defendant's answer or return is deemed insufficient in law.

(c) That judgment is entered for the plaintiff and against the defendant.

(d) That a peremptory writ of mandamus be issued to said Wilson A. Wert, requiring and commanding him to do and perform all and singular the

acts and things prayed for and mentioned in the plaintiff's petition for an alternative writ of mandamus.

*(e)* That said writ shall be served by the sheriff or his deputy upon the defendant by giving him personally a copy thereof, attested by the prothonotary or his deputy.

*(f)* That the said writ shall be issued at any time after twenty days shall have elapsed from the date hereof.

*(g)* That the defendant pay the costs.

From Calvin E. Arner, Allentown, Pa.