# Scowden's Appeal.

1. The Act of June 12th 1879, entitled " An act to provide for the holding of courts in certain cities of this Commonwealth," provides that in all counties containing a population of not less than 60,000 inhabitants, and in which there is now or may hereafter be, any incorporated city of the fifth class, it shall be the duty of the president judge, upon the application of the mayor and councils of such incorporated city, to make an order for the holding of one week of court or more, if necessary, in said city : *Held*, that said act is in conflict with sect. 7, art. 3, of the Constitution, and is void.

2. The fourth section of said act makes it the duty of the prothonotary and other county officers to attend the sessions of said court, in said city, and to bring with them papers and documents, &c. : *Held*, that said section is in conflict with sect. 4, art. 14, of the Constitution, which provides that prothonotaries shall keep their offices in the county town of the counties of which they shall respectively be the officers. The plain meaning of these words is that the officers referred to shall keep the records and papers pertaining thereto at the county seat.

3. Per PAXSON, J.—This act is an attempt to evade the Constitution. It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious.

November 22d 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the Court of Common Pleas of *Crawford county :* Of October and November Term 1879, No. 382. In Equity.

Bill in equity filed by J. D. Gill, Cyrus Kitchen, Alexander Power and P. A. Laffer, against Joseph Scowden, William J. Kerr, James Jamison, commissioners of Crawford county, and the city of Titusville, praying for an injunction upon the commissioners of said county, restraining them from expending public money under the Act of Assembly of June 12th 1879, relating to holding of courts in certain cities of the Commonwealth.

The bill alleged that the said commissioners were about to expend money of the county in procuring suitable rooms in the city of Titusville for holding the courts in that city, under the provisions of the Act of June 12th 1879, Pamph. L. 174; and averred that said act was unconstitutional, and prayed that the defendants be restrained. The material portions of the Act of 1879 will be found set forth in the opinion of this court. The defendants filed an answer, in which they admitted their intention to act as averred in the bill, and the case was referred to a master, D. C. McCoy, Esq., who reported that the act was constitutional and in favor of the dismissal of the bill. Exceptions were filed to the report, which the court, Church, P. J., sustained in an opinion deciding that the act was unconstitutional, and making a decree awarding an injunction as prayed for. From this decree this appeal was taken.

*S. Minor, Thomas Roddy, F. B. Guthrie* and *Roger Sherman,* for appellants.—In the case of Wheeler *v.* Philadelphia, 27 P. F.

Smith 348, and Kilgore *v.* Magee, 4 Norris 401, this court decided that classification of cities by population was within the scope of legislative power under the Constitution, even though there might be but one city in such class, provided that the act of classification was so drawn as to include those that might in the future come into existence.

In the case of The Commonwealth ex rel. Fertig et al. *v.* County Commissioners, 7 Norris 258, the Supreme Court held the Act of April 18th 1878, Pamph. L. 29, an act with the same title and for the same purpose as the act in question, unconstitutional, for the reason that it did not classify cities or counties by population, but by geographical description, and did not by its terms provide for future growth of either cities or counties, and by reason of these defects in the enactment, the operation thereof would be for ever restricted to one city and one county. This Act of 1879 was passed to meet this decision and avoid the vice of the former act.

Here is no geographical description, but a distinct classification of counties by population, and distinct provisions for the wants and growth of the future. Language could not make these requisites plainer or more comprehensive. But by the words following this portion of the first section, a limitation is placed upon the counties where courts may be held under the provisions of this law, and it is claimed that this renders the law obnoxious to the constitutional provisions regarding special legislation. The appellants think not; for what follows refers to a classification made and already in active existence of cities in being and to grow up in the indefinite future, and to come within the classification already established. Legislation as to cities of the fifth class is lawful; and whether it be said that the words restraining the operation of the act to counties having or to have sixty thousand inhabitants is a limitation upon the cities of the fifth class, or that the cities of the fifth class are limitations upon the counties of sixty thousand inhabitants, or both, you have, after all, no legislation that does not relate to counties and cities classified according to law. It is eminently proper, and in accordance with public policy and public convenience, that places should be designated for the holding of courts, regulated by the population of such places, and that they should be of such size and importance that the courts would be needed by the people.

But again, it is said that the act under consideration provides for the keeping of the offices of the county officials in another place than the county seat.

The language of the act will bear no such construction. They are to attend the sessions of the courts in those cities, and bring with them such papers and documents and perform such official duties as said court in the transaction of its business at such times

may require.    They are to bring no dockets, no seals, to open no office, to keep none at any time, but merely to attend the courts, and there perform their official duties, incident to the business done before the court while it sits.    Under the legal Arbitration and Referee Acts, the papers of the particular cases tried are taken from the file and before these courts ; and in our part of the state we have not yet heard of any one's rights being imperiled thereby. Nor when causes are referred to masters and auditors, who habitually sit all over the county, and even go to distant parts of the state to suit the convenience of parties.    Nor do we think that it is in any way derogotary to the dignity of a court to sit within reach of the citizens upon whose rights it is to adjudicate.

*W. R. Bole, F. P. Roy* and *J. W. Smith,* for appellees.—We contend that the Act of 1879 is unconstitutional for the following reasons so ably set forth in the opinion of the court below : I. In that it violates section 7 of article 3 of the Constitution, prohibiting special legislation in the following particulars : 1. In legislating for certain counties to the exclusion of all others, without any general classification of counties.    2. In legislating for certain cities of the fifth class to the exclusion of other cities of the same class.    3. In prescribing the duties of county officers in certain counties to the exclusion of all others.    4. In prescribing the powers and duties of city officers in certain cities of the fifth class to the exclusion of others of the same class.    II. In that it violates section 3 of article 3 of the Constitution, which provides that " No bill shall be passed containing more than one subject, which shall be clearly expressed in its title.".    III. In that it violates section 1 of article 2 of the Constitution, which vests the legislative power in the General Assembly, to wit : In that legislative power is delegated by this act to the mayor and council of certain cities.    IV. In that it violates section 4 of article 14 of the Constitution, requiring county officers to keep their offices in the county town of the county in which they shall be officers.    V. In that it violates section 26 of article 5 of the Constitution, which provides that all laws relating to courts shall be general and of uniform operation, &c.    VI. In that it violates section 17 of article 1 of the Constitution, forbidding the legislature to pass any law impairing the obligation of contracts.

Mr. Justice PAXSON delivered the opinion of the court, January 3d 1881.

This was an appeal by the Commissioners of Crawford county from a decree of the court below, restraining them " from expending any public money in procuring rooms for holding courts in Titusville, or for any other purpose mentioned or contemplated by the Act of Assembly approved June 12th 1879, entitled ' An act

to provide for the holding of courts in certain cities of this Commonwealth.' "

A former Act of Assembly intended to accomplish the same result was declared to be unconstitutional by this court. See Com. ex. rel. Fertig et al. *v.* Patton et al., 7 Norris 258. The ground of objection was that it was in conflict with article 3, section 7, of the Constitution, prohibiting special legislation. The Act of June 12th 1879 was evidently framed with a view to avoid this difficulty. The first section thereof provides " that in all counties of this Commonwealth where there is now or may hereafter be a population of not less than sixty thousand inhabitants, and in which there is now or may hereafter be any incorporated city of the fifth class, subject to the provisions of the Act of 23d May 1874, and the several supplements thereto, or which may be incorporated under said acts, it shall be the duty of the president judge, or of the additional law judge, or of either, upon the application of the mayor and council of such incorporated city, to make an order providing for the holding of one week of court, or more if necessary, at the discretion of the court, after each regular term of court of said county, for the trial of civil or criminal cases in said city:" Then follow several other sections providing for the details of this arrangement.

It is no part of our business to discuss the wisdom of this legislation. However vicious in principle we might regard it, our plain duty is to enforce it, provided it is not in conflict with the fundamental law.

It requires but a glance at the act to see that it is an attempt to evade the Constitution. It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious.

In Wheeler *v.* The City, 27 P. F. Smith 338, we decided that an act classifying cities by population was not transgressive of the Constitution. We need not now repeat the reasons for this ruling. It is sufficient to say they have no application here. The Act of June 12th 1879 makes no attempt at the classification of cities. It is merely an effort to legislate for certain cities of the fifth class to the exclusion of all other cities of the same class. That is to say, it refers only to cities of the fifth class which are situated in a county having a population of sixty thousand. The act was doubtless regarded by its framers as a classification of counties, but it is not so. Nor does any good reason occur to my mind why there should be such classification. If there be such reasons, amounting to a necessity therefor, we shall probably hear of them in due season. In the meantime, classification which is grounded in no necessity, and has for its sole object an evasion of the Constitution, will not be encouraged.

What has been said is decisive of the case. As, however, there

may be future attempts of the same character, I will call attention to another provision of the act which is equally defective. The 4th section is as follows : " It shall be the duty of the sheriff of the county, of the register of wills, and clerk of the Orphans' Court, of the prothonotary of the Court of Common Pleas, of the clerk of the Court of Oyer and Terminer, General Jail Delivery and Quarter Sessions of the Peace, or the deputy of either, and of the district attorney, to attend the sessions of said court in said city, and to bring with them such papers and documents, and perform such official duties as said court in the transaction of its business at such times may require."

This section of the act is in conflict with section 4 of article 14 of the Constitution. Said section provides that " prothonotaries, clerks of courts, recorders of deeds, registers of wills, county surveyors and sheriffs shall keep their offices in the county town of the counties of which they shall respectively be officers." The plain meaning of the words " shall keep their offices in the county town," is that the officers referred to shall keep the records and papers pertaining thereto at the county seat. It does not mean that they shall keep a room there with bare walls and empty pigeon holes. This is not what the Constitution contemplates by the word " office." On the contrary it has a much broader signification and refers to the place in which the business of such office is transacted and the records kept. This constitutional provision is eminently wise. Aside from the danger of the destruction or loss of the public records consequent upon their periodical removal to distant points, the public inconvenience resulting therefrom would be intolerable. The case bears no analogy to the taking out of the proper office the papers in a single cause to be used before arbitrators, nor to the production of a paper or book upon a subpœna. The act in question is broad enough to empower the court to order the entire records in either or all of the offices to be removed to Titusville during any and every term of the court to be held there. Indeed it is difficult to see how causes could be tried there without the removal of a considerable portion of the records. The practical effect of the enforcement of this clause of the Constitution will be to put an end for the future to such legislation as we have been considering. So long as, the records are required to be kept at the county seat it will be found practically impossible to hold the courts elsewhere. We see little to regret in this result. It adds neither to the dignity nor the usefulness of a court to give it a peripatetic character.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.