IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1890.

## PAVING, ETC., OF WYOMING STREET.
## PAVING, ETC., OF BOGGS AVENUE.
## PAVING, ETC., OF SHILOH STREET.

APPEALS BY W. ENGEL ET AL., L. BEINHAUER ET AL., AND C. WILBERT ET AL., FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 31, 1890—Decided January 5, 1891.*

[To be reported.]

1. The division of the cities of this state into three classes by the act of May 23, 1874, P. L. 230, held to be constitutional in Wheeler v. Philadelphia, 77 Pa. 338, is a necessary provision to meet the different needs of cities differing widely in population; but the act classifies cities as such, and its effect is to distinguish municipalities in one class from those in another for purposes of municipal government only.

2. Hence, if an act relating to one class of cities takes effect upon the powers or duties of the municipality, or upon the number, character, powers, or duties of the corporate officers, and affects all members of a given class alike, it is general and constitutional; but, if it relates to matters not under municipal control or affecting the municipal government, it is unconstitutional: Weinman v. Railway Co., 118 Pa. 192; Ayars' App., 122 Pa. 266; Ruan St., 132 Pa. 257.†

---

* On account of the importance of this case, the report of it is advanced.
† And see Commonwealth v. Reynolds, ante, p. 389.

(494)

Statement of Facts.

3. Tried by this test, the sections of the act of June 14, 1887, P. L. 386, relating to streets in cities of the second class, which provide for the creation and fix the powers and duties of the " Board of Viewers," are in plain violation of the constitution and are therefore void, because : (a) They do not relate to any subject under municipal control, or to the exercise of any municipal power. Moreover,

4. (b) They affect the powers and practice of the courts of law of Allegheny county; and (c) they impose on citizens of a city of the second class a new, inconvenient, injurious and oppressive system for assessing damages and benefits, alleged to be done by or to result from an entry on land under the right of eminent domain, to which system citizens of other cities and other parts of the state are not subjected.

5. These sections might be held unconstitutional and void for the further reason, that their provisions are of such a character that they practically deny to persons affected by them that free and open access to the courts of law which the Bill of Rights guarantees to every citizen of the commonwealth : Per Mr. Justice WILLIAMS.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

Nos. 140, 141, 151 October Term 1890, Sup. Ct.; court below, Nos. 805 March Term 1890; 273 December Term 1889, and 333 June Term 1890, C. P. No. 1.

On March 1, 1890, William Engel and others presented their petition, praying to be allowed an appeal to the court below from an assessment of benefits against their properties, in the matter of the paving and curbing of Wyoming street, made by the board of viewers of the city of Pittsburgh and approved by the city councils, specifying the grounds and reasons for their appeal in certain exceptions, one of which was to the effect that the act of June 14, 1887, P. L. 386, under which said board of viewers was appointed and said assessment made, was unconstitutional and void.

On October 7, 1889, and April 12, 1890, respectively, similar petitions, with averments raising, inter alia, the same questions, were entered by Louis Beinhauer and others, in the matter of the paving and curbing of Boggs Avenue, and by Christ. Wilbert and others, in the matter of the grading, paving and curbing of Shiloh street.

The act of June 14, 1887, P. L. 386, provides, inter alia, that the councils of cities of the second class, upon presentation of a petition, accompanied by an affidavit that the signers thereof

own one third of the property fronting or abutting on any street, may order that such street be opened, graded, paved or otherwise improved, and that after the making of such an order, the fact that the petition was signed by one third of the property owners, as aforesaid, shall not be questioned in any proceedings had in accordance therewith; that the expenses of the improvement shall be assessed upon and collected from the properties benefited, municipal liens being filed therefor, with the addition of the compensation of the viewers making the assessments, to be fixed by the councils, and an attorney's fee of five per cent for collection. The act provides, further, for the appointment of a standing board of viewers to make all assessments of damages and benefits, the manner of their appointment, and the course of procedure to be followed in the assessment and collection of damages and benefits for such improvements, being prescribed in part by the following sections:

"§ 4. It shall be the duty of any Court of Common Pleas of the proper county, upon the petition of the city attorney, in the month of January succeeding the passage of this act, and every three years thereafter, to appoint three discreet freeholders of the proper city as viewers on street improvements, to serve for the term of three years, or until their successors are duly appointed and qualified. The court shall have the power to remove the viewers, or any one of them, at any time upon the address of councils, and to fill any vacancy for the unexpired term which may occur by death, or otherwise."

"§ 7. The city councils shall hear appeals by any party aggrieved by the report of the viewers, and shall have power to approve the report, to send the same back for further action, or quash the proceedings.

"§ 8. When the report of viewers is approved by the councils, such approval shall be final, binding and conclusive upon all parties, unless within ten days thereafter some person interested therein shall present a petition to the Court of Common Pleas, by whom the viewers were appointed, containing a clear and succinct statement of each and every ground of objection to the report, and upon hearing thereof, all other objections shall be regarded as waived, and no other objection shall be considered. The petitioners shall notify the city attorney of the time of making his, her or their application, and furnish

Statement of Facts.

·him a copy of such petition and specification of objections. The court shall direct the application to be filed, and upon notice of the filing thereof, the clerk of councils shall certify to the court all the papers and proceedings in the case, and thereupon the court shall take such action in the premises as they may deem right and proper, and shall have power to hear evidence in open court, before a judge thereof, and modify or approve the report, or quash the proceedings, or appoint reviewers, who shall proceed in like manner, and the court shall have like power to hear evidence, or to modify, approve or quash their report, and the final order and decree of the court thereon shall be binding and conclusive upon all parties."

" § 10. The Court of Common Pleas of the county, in which any city of the second class is situated, shall have and are hereby vested with the power to make such rules as may be necessary for a prompt and speedy hearing of all such petitions relating to street improvements. No appeal taken or petition presented shall enure to the benefit of any other than the person or persons taking or presenting the same. And the pendency of the appeal or petition shall not prevent the city and its contractors from working upon and completing such portions of the improvement not covered by and embraced in the appeal or petition; nor shall the same prevent the city from ascertaining, assessing, collecting and paying the benefits and damages in the mode provided against those who have not appealed.

" § 11. The amount of damages for the taking, injury or destruction of property, by reason of any street or sewer improvement, shall, in case of appeal, be determined by jury, according to the course of common law, upon the demand of any person interested, but such demand shall be made within thirty days from the ascertainment of the damages, or the filing of a report thereof. In case the demandant shall not recover, he shall pay all costs of the appeal; and in case the award as fixed by the jury differs from the original report of the viewers, the court shall order the record of the cause or causes to be returned to the board of viewers of street improvements, with directions to assess the difference, upon the properties the board may find benefited, to pay such differences; but in case no property can be found on which to assess the difference, then the same shall be assessed against and paid by the city. But either party

shall have the right of review in the Supreme Court, either by ·
writ of error or appeal, as the case may require."

"§ 20. No mistake in the name of the owner shall vitiate
the claim, but the court shall have power at any time, on mo-
tion, to correct the mistakes of description and add or strike
out names of defendants. If the name of a party is added
as defendant, it shall have the same effect as if he had been
named as a defendant in the original lien at the time of its being
filed. Any owner whose name shall be added as defendant
after the filing of the claim shall be served with a scire facias
before judgment shall be entered against him. A sale on a
levari facias shall convey only the interests of those who are
named as defendants in the writ, but a judgment or sale against
a reputed owner, or one having a limited estate or interest,
shall not prevent a subsequent judgment or sale against the
true owner. Names may be added of the real owners as de-
fendants although judgment may have been entered against
reputed owners, or those having a limited interest. Where the
defendant in any writ of scire facias shall be a corporation, and
the property assessed cannot be sold, the scire facias shall be
proceeded upon to judgment, and a writ of fieri facias shall be
issued thereon, by virtue of which any personal property of the
corporation wherever situate may be levied on and sold, or an
attachment in execution may be issued, as in other cases.

"§ 21. No lien filed for opening, widening, grading, paving
or curbing any street, avenue, lane or alley, or any part there-
of, or for the construction of any sewer, or sidewalk, which
may hereafter be made, shall be defeated for want of any notice
required by law, or any informality or irregularity in the pro-
ceedings. This act shall not be construed to prevent any de-
fence showing want of authority in the city, or its officer, to do
the work, or any other matter or thing affecting the merits of
the claim.

"§ 22. When a claim shall be filed and scire facias issued
upon an assessment, it shall not be necessary to file an affidavit
of claim, but the defendant shall file an affidavit of defence,
setting forth with particularity any and all defences to such
lien. Judgment may be entered in default of appearance, or
sufficient affidavit of defence, at any time after the return day
and ten days' service of the writ, or upon two nihils; and all

Arguments.

matters necessary to support the claim, not denied in the affidavit of defence, shall be taken as admitted on the trial."

Upon the presentation of said petitions, orders were made allowing the appeals prayed for, and directing the clerk of councils to certify to the court all the papers and proceedings in the several cases. Subsequently, the city of Pittsburgh filed answers to the petitions denying all the material averments thereof.

On July 5, 1890, after hearing and argument on petitions and answers, the court, without opinion filed, entered a decree in each case, dismissing the appeal and exceptions at the costs of the petitioners, confirming the report of the board of viewers, and ordering that the record be certified to the city attorney to be further proceeded in according to law. Thereupon, the exceptants took these appeals, assigning said decrees for error.

*Mr. M. A. Woodward* and *Mr. Charles A. O'Brien*, for the appellants in Nos. 140 and 141, and *Mr. Charles S. Fetterman*, for the appellants in No. 151;

The act of June 14, 1887, P. L. 386, is clearly unconstitutional, as local and special legislation. By § 4, the jurisdiction in street cases is changed from the Court of Quarter Sessions, where it was formerly, to the Court of Common Pleas; and special regulations are prescribed as to the manner of exercising it. That section is void, as it relates, not to any corporate power of cities of the second class, or to any corporate officer, or any subject under the control of the city government, but to the practice and procedure in the common-law courts of Allegheny county: Ruan St., 132 Pa. 257. Sections 8, 10, 20, 21 and 23 are subject to the same objection. They regulate proceedings in the court; and the regulations they prescribe are of such a character as to give the city advantages over other suitors, in the choice of the court and in various other particulars. Statutes enacted for cities of a certain class must be directed to the existence and regulation of municipal powers and to matters of local goverment; otherwise, they are local in character, though under the guise of classification: Weinman v. Railway Co., 118 Pa. 192.

*Mr. W. C. Moreland*, City Solicitor, (with him *Mr. Thomas D. Carnahan*). for the city of Pittsburgh, appellee:

Arguments.

1. The act of June 14, 1887, P. L. 386, is framed to subserve great public interests. The system it provides for the general conduct of our improvements is one with which our people have long been familiar, and is based almost wholly upon acts of assembly running from 1857 to 1873. The duties of the viewers under the act of 1887 are precisely the same as they were prior to its passage, and are the same as those of all viewers in cases where the right of eminent domain is exercised. The powers of the city of Pittsburgh, in reference to the opening and improvement of streets, are precisely the same under the act of 1887 as under the special act of January 6, 1864, P. L. 1131, and its supplements. The right of appeal to the courts is the same as before, except that the appeal is taken directly to the Court of Common Pleas, instead of to the Court of Quarter Sessions, and, by certification therefrom, to the Court of Common Pleas. The provisions of the act of 1887 are all in the line of protecting public interests, and not one of them deprives the citizen of any legal right or remedy. They relate to the exercise of a corporate power, having reference to the compensation which accrues to property owners therefrom.

2. The sections of the act which are assailed as unconstitutional, resemble greatly the provisions contained in clauses 32, 33, 38 and 39 of § 20, and in §§ 37, 47, 49, 50, 53, 54 and 55, of the act of May 23, 1874, P. L. 230, except that the system ordained by the act of 1874 does not furnish the same protection to the citizen, nor provide so amply for procuring redress, or for securing a competent board of viewers, with clearly defined and carefully guarded duties. The various sections of the act of 1874 were unquestionably examined with great care by this court, before pronouncing its decision sustaining that act, in Reading City v. Savage, 124 Pa. 328, and by parity of reasoning the legislation questioned in the present case should be held constitutional. Again; even the act of May 23, 1889, P. L. 272, in regard to assessments for local improvements, which excludes from its operation cities of the first and second classes, and provides for the appointment by councils of viewers to assess benefits, without giving any appeal, was sustained: Chester City v. Black, 132 Pa. 568.

3. Under § 8, article XVI., of the constitution, and the act of June 13, 1874, P. L. 283, the right of trial by jury in the

Opinion of the Court.

Court of Common Pleas, in all cases relating to the taking of property, is clearly fixed, and by every act of the legislature, relating to such matters, the jurisdiction to hear appeals and appoint viewers is placed in that court.   It is said that the provision in the act of 1887 for the appointment of viewers of street improvements by the Court of Common Pleas, and for appeals to that court, is in conflict with § 7, article III., of the constitution, prohibiting special laws regulating the practice or jurisdiction of courts.   Having voluntarily and knowingly invoked the aid of the court whose jurisdiction they now seek to repudiate, the appellants are estopped from objecting to it: Spring St., 112 Pa. 262.   But, if the doctrine of classification is to be maintained, the jurisdiction conferred by the act upon the Court of Common Pleas is legally right, and just as free from criticism as the provisions in the act of May 23, 1874, P. L. 230: Ruan St., 132 Pa. 257; Shaaber v. Reading City, 133 Pa. 643; Spring St., supra; Reading City v. Savage, 124 Pa. 328.   The provision that the particular court which appointed the viewers shall hear appeals, is in harmony with the rule that the court in which proceedings are begun always has exclusive jurisdiction of them.

OPINION, MR. JUSTICE WILLIAMS:

These cases involve an important constitutional question. It is not necessary to enlarge upon such common-place propositions as that the constitution is the organic law of the commonwealth; that it is framed by the people in order to establish a form of government for themselves, and define the limits within which its powers must be exercised; and that it is the duty of the courts to uphold its provisions, and to interpret them in such manner as to give them the effect that their framers evidently designed. If experience demonstrates the need of change, the power to make it and to determine its extent and character resides in the people. It does not reside in the legislature, nor in the courts, nor in both together.

Among the limitations put by the people upon the exercise of legislative power are the following, from article III., § 7, of the constitution of 1874: " The legislature shall not pass any local or special laws . . . . regulating the affairs of counties, cities, townships . . . . ; authorizing the laying out, opening

or maintaining roads, highways, streets or alleys . . . . ; creating offices, or prescribing the powers and duties of officers in counties, cities . . . . ; regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts . . . . or other tribunals." There is no room for doubt about the meaning of these provisions. Whether they are all wise or not, they are all very plain, and they were intended to secure to every citizen of the state equal rights and privileges and a common method for asserting and enforcing them through the courts of law. The means by which this end is secured are general laws administered by state courts, which are brought within easy reach of every citizen by the establishment of small judicial districts. The constitution of 1874 recognizes and adopts the system of courts previously organized, including the courts of Common Pleas and of the Quarter Sessions of the Peace. The boundaries of their respective jurisdictions were clearly fixed and were well known. It is plain therefore that any change in the jurisdiction or practice of these courts must be made by general laws, operative, not in one county or city, but in all the counties and all the cities of the commonwealth.

Some confusion seems to exist, however, in regard to the definition of a general law, and a theory has been advanced in several recent cases, and has been contended for by the appellee in this case, that the division of the cities of the state into classes by the act of 1874, which was recognized as a necessary classification in Wheeler v. Philadephia, 77 Pa. 338, requires us to hold any law to be general which embraces all the cities of a given class, without regard to the subject to which it relates. This theory overlooks the objects and purposes of classification, which are very clearly set forth in the first section of the act which divides the cities of the state into three classes. These are, to make provision for the municipal needs of cities which differ greatly in population. Differences in population make it necessary to provide different machinery for the administration of " certain corporate powers," and to make a difference in " the number, character, powers, and duties of certain corporate officers, " corresponding with the needs of the population to be provided for. An act of assembly that relates to a subject within the purposes of classification, as they are thus declared

by law, is a general law, although it may be operative in a very small portion of the territory of the state, if it relates to all the cities of a given class. For example, an act relating to the lighting of streets in cities of the third class would be a general law for the following reasons: (*a*) It relates to the exercise of " corporate powers ; " (*b*) it affects all the cities of a given class in the same manner; (*c*) it affects the inhabitants and property-owners in such cities, because of their residence and ownership therein, and the circumstances and needs that are peculiar to the class to which their city belongs. But a law that should provide that all applications made by guardians, administrators, and executors for leave to sell the real estate of a decedent for the payment of his debts, in cities of the third class, should be made, not in the court having jurisdiction of the petitioner's accounts, but in the Court of Quarter Sessions, would be a local law, and therefore unconstitutional. It would be applicable to the same sub-divisions of territory as the law relating to the lighting of streets, but it would relate to the exercise of no corporate power residing in a city, nor to the duties of any municipal officer, nor to the needs or welfare of citizens of a city of the third class, as distinguished from other citizens of the commonwealth. On the other hand, it would affect the jurisdiction of the state courts, modify the duties of public officers whose functions are not local, but general, and touch the inhabitants of cities of the given class in the exercise and enjoyment of their rights as citizens of the state, not as dwellers in the municipality. The test therefore by which all laws may be tried is their effect. If they operate upon the exercise of some power or duty of a municipality of the given class, or re late to some subject within the purposes of classification they are general, otherwise they are local : Weinman v. Railway Co., 118 Pa. 192; Ayars' App., 122 Pa. 266; Ruan St., 132 Pa. 257. Laws transcending the constitutional limit have been held to be void in many cases, among which are Davis v. Clark, 106 Pa. 377 ; Scowden's App., 96 Pa. 422 ; Commonwealth v. Patton, 88 Pa. 258 ; Weinman v. Railway Co., 118 Pa. 192.

The case, now before us, requires the application of this test to the act of June 14, 1887, relating to the improvement of streets in cities of the second class. Some of its provisions are both new and startling. The act provides that the city

Opinion of the Court.

councils may direct the opening, grading, widening, or other improvement of any street, lane or alley, on the petition of one third in interest of the owners of property on such street, lane or alley; and after councils shall have given the order for such opening, grading, or widening, the fact that the petition was signed, as it purported to be, by one third of the property-owners, "shall not be questioned in any proceeding had in accordance therewith." No matter how grossly councils may have been imposed upon, or how decided may be the hostility of three fourths or four fifths of the owners of property to be affected by the proposed improvement, the mouths of the great majority are closed. The right of petition is denied them. The right to expose the fraud from which they must suffer unless their complaint is heard is taken away, and they are delivered, bound hand and foot, to the tender mercies of the city's contractor.

But the fourth section introduces another novelty. It provides for the appointment of a "board of viewers" by the Court of Common Pleas of Allegheny county, to which all claims for damages from the exercise of the right of eminent domain by the city in opening, grading, or widening streets, lanes, and alleys, and from changes of grade or other improvement therein, must be referred. The members of this board hold office for three years, and are appointed, not at the instance of the party injured, or on the knowledge of the court, but solely on the motion of the city attorney, and when he chooses to ask it. They may be removed, but not at the instance of the property-owners. This must be done, on the "address of the city councils." Their compensation is fixed by the city councils. Their expenses are allowed and paid by the city councils. All claims for damages growing out of the opening, grading, and widening of streets, lanes, and alleys, must go to and be decided by this board. From their decision an appeal lies to the city councils, whose decision is "final and conclusive" unless appealed from within ten days. If an appeal is taken, the city attorney must be notified and furnished with a copy of all the objections and reasons on account of which the appeal is taken. Pending the appeal, if the party complaining is fortunate enough to secure one, the contractor is carefully provided for, for the act expressly provides that

Opinion of the Court.

his work shall go on except on the premises of the appellant. No matter what question may be raised, neither the work nor the collection of assessments can be suspended except as to the particular appellant.

It is easy to see what the practical operation of the machinery thus provided might be. A contractor or any interested party might secure a name or names to a petition for the improvement of some street, lane, or alley, setting forth that the signers are one third in interest of the owners of property on such street, lane, or alley, and that the city in which such street is located is a city of the second class. Upon this petition, the city councils may direct the opening, widening, or other improvement asked for. The great majority of property-owners may know nothing of it till the improvement is directed, and then, because it has been directed, they cannot be heard to object. Judgment is entered against them without notice, and, because it has been entered, they cannot show that it is wrong, that the city has been imposed upon, and that the improvement is not wanted by one third or one quarter of the owners. The city enters under its right of eminent domain, and its contractor is let loose upon the property-holders. When their property is taken, the owners cannot come into court and ask an ascertainment of their damages, but must present their claims to the "board of viewers." The board makes its award and reports, not to the court that appointed them, but to the city. If the decision of this board, appointed on the motion of the city, removable on the address of the city, and paid by the city, is not satisfactory, an appeal lies from the servants to the master, from the city's board of viewers to the city itself. The city that makes the entry and inflicts the injury, sits as an appellate court to revise the awards against itself for its own acts, and its award is final and conclusive unless the lot-owner is so unreasonable as to insist on being heard in a court of law. If he does this, he must make hot haste and perfect his appeal and lodge it in the Court of Common Pleas within ten days, and comply with a series of technical requirements over which he is in great danger of stumbling as he goes. If he runs the gauntlet safely, and secures foot-room in a court of justice, the front of his own lot is safe from invasion for the time, but the contractor for whose interest all these remarka-

Opinion of the Court.

ble provisions seem to " work together for good " may tear up and tear open the street on both sides of his lot, and proceed with the work careless of the consequences to anybody, because secure of his own compensation in any event. The comfort of the public, the interest of the property-owners, and the pockets of the tax-payers may all suffer, but the contractor is safe.

Such being the situation of the property-owner, whose land is entered and appropriated by the city, what is the situation of his neighbor whose land is not entered? He must pay for the injury the city does. Section 5 requires the " board of viewers," after they have estimated the damages sustained by those affected by the proposed improvement, to assess the amount of such damage on the property of those whom they may find to be benefited, and return their assessment of benefits to the city. To this assessment the city is authorized to add all the costs and expenses, including the wages of the board of viewers and their expenses, and five per centum on the whole sum for the city attorney, and call on the lot-owners, who have been assessed, to pay the total so ascertained. If payment is not promptly made a municipal lien is entered. If the lot-owner appeals from the decision of the board, it is to the city itself, now sitting as an appellate court to revise judgments in its own favor, being both plaintiff and judge. If not satisfied with the judgment of such a tribunal, he must find his way to a court of law by the same route laid out for his neighbor who is a claimant. In one respect his condition is much worse than that of the claimant; for, if upon his appeal the claimant recovers a larger sum for the injury he has suffered than the board and the city allowed him, this recovery summons the board of viewers to another meeting, at which they are required to add to the benefits previously assessed a sum equal to the pro rata share of each lot-holder, assessed with benefits, of the additional sum recovered. To this the city again adds costs and expenses, and five per centum for the city attorney, and demands payment of this additional sum. This may be repeated as often as a successful claimant recovers increased damages.

It is not our duty, and we have no desire, to speak of this act of assembly except as this case may require it. We therefore

Opinion of the Court.

content ourselves with saying that so much of it as relates to the creation, functions, powers, and compensation of the "board of viewers" is in plain violation of article III, § 7, of the constitution, and cannot be sustained.  These provisions do not relate to any municipal function or officer, but to the jurisdiction of and practice in the courts of law of Allegheny county.  They fasten upon such of the citizens of the commonwealth as are the owners of property in a city of the second class, a new, inconvenient, injurious, and despotic system for the assessment of damages done by the exercise of the right of eminent domain, to which citizens in other parts of the state are not subjected.  They fasten upon lot-holders, who are assessed with benefits, a new, inconvenient, injurious, and despotic system for the assessment of benefits, to which citizens in other portions of the state are not subjected.  If the exigencies of the case required it, an examination of the bill of rights might afford still another reason for holding this act to be unconstitutional, for its provisions amount to a practical denial, to the persons affected by them, of that free and open access to the courts of justice which the bill of rights so plainly guarantees to every citizen of the commonwealth.

> The judgments in these cases are reversed, and the assessments and all proceedings based thereon or relating thereto are set aside.

Mr. Chief Justice PAXSON and Mr. Justice MITCHELL: We concur in this judgment, but not in all of the reasons set forth therefor.