G. N. Chalfant *v.* A. H. Edwards, W. B. Cathcart, R. W. Thompson, J. H. Cook, John W. Greist and S. W. Jeffries, Directors of The Lincoln Sub-School District, in City of Pittsburg, Appellants.

*Municipality—Classification of cities.*

The effect of the classification of cities must not be carried beyond its purpose as declared in the original classification law, and a law relating to any other subject though embracing all the cities of any given class, or of all the classes into which cities are divided is local and unconstitutional, if the subject be one upon which local and special legislation is forbidden.

*Constitutional law—School law—Local legislation—Classification of cities. Acts of July 3, 1895, P. L. 588, and July 3, 1895, P. L. 603.*

If an act regulating the affairs of school districts either produces or may produce local results, it offends against art. 3, sec. 52, of the constitution of 1874, which forbids any attempt to regulate the affairs of school districts by local or special laws.

The act of July 3, 1895, P. L. 588, entitled " An act to establish and to regulate the affairs of school districts and sub-school districts in cities of the second class, and to repeal all local and special laws inconsistent therewith," is a local and special law repugnant to art. 3, sec. 52, of the constitution.

The act of July 3, 1895, P. L. 603, entitled " An act repealing an act entitled ' An act consolidating the wards of the city of Pittsburg for educational purposes, approved February 19, 1855,' " and also repealing an act entitled " An act consolidating the wards of the city of Pittsburg for educational purposes, approved February 12, 1869," is a local law within the meaning of art. 3, sec. 55 of the constitution, which declares that such a law shall not " be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be effected shall be situated." The act not having been advertised in the city of Pittsburg is invalid.

Assuming the general rule to be that notice will be presumed in the absence of any proof upon the subject, yet the presumption cannot prevail when it is a conceded fact in the case that no notice was given.

While the legislature of 1895 might have repealed the act of February 12, 1874, P. L. 43, relating to the manner and form of publishing notices of local acts, as long as it did not do so, the citizens of a locality affected by a local act had a right to rely upon the observance of the act of 1874.

Argued Nov. 4, 1895. Appeal, No. 7, Oct. T., 1895, by defendants, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1896, No. 134, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity to restrain the sale and delivery of bonds of a school district.

The bill alleged:

1. That plaintiff is a resident taxpayer and owner of real estate in that portion of the 21st ward of the city of Pittsburg, known as Lincoln Sub-School District, and that the ward was divided into two districts under the provisions of act of assembly of May 12, 1869, consolidating the wards of the city of Pittsburg for educational purposes.

2. That the defendants named are the duly elected directors of said sub-school district.

3. That the directors alleging that the school accommodations in said district were wholly inadequate, applied to the court of common pleas No. 2 of Allegheny county for leave to borrow money for school purposes, and that the court upon consideration authorized said directors to borrow not more than fifty thousand dollars, ($50,000) at a rate of interest not exceeding $4\frac{1}{2}$ per cent, and to issue bonds for that purpose as provided by law.

4. That said proposed loan would increase the bonded indebtedness of said school district beyond the limit allowed by law, the present indebtedness being $37,000, with a sinking fund of five thousand ($5,000) dollars.

5. That complainant is advised that the said Lincoln Sub-School District has now no legal existence, by reason of the passage of an act of assembly approved July 3, 1895, P. L. 603, entitled, " An act repealing an act consolidating the wards of the city of Pittsburg for educational purposes, approved February 19, 1855; " and also repealing an act entitled "An act consolidating the wards of the city of Pittsburg for educational purposes, approved February 12, 1869 "—and averring also that the proposed issue and sale of bonds is without authority of law.

6. That the issue of said bonds will result in illegally incumbering the property of the school district, increasing the taxes, and being in derogation of plaintiff's rights as a tax-payer.

Complainant prayed for an injunction restraining the sale and delivery of the bonds, and for a decree declaring the bonds illegal and void.

The case was heard on bill and answer.

The court in an opinion by EWING, P. J., entered a decree enjoining defendants from issuing the bonds.

*Error assigned* was decree as above.

*J. McF. Carpenter*, for appellants.—The act of July 3, 1895, P. L. 603, is unconstitutional.

*G. N. Chalfant, George Shiras and C. C. Dickey* with him, for appellee.—The act of July 3, 1895, P. L. 598, is unconstitutional, but the repealing act is constitutional: Wheeler v. Philadelphia, 97 Pa. 338; Scowden's App., 96 Pa. 422; Ayars' App., 122 Pa. 266; Scranton's App., 113 Pa. 176; 1 Dillon on Mun. Corporations, sec. 25; Com. v. Reichard, 8 Pa. C. C. 563; Weinman v. Ry. Co., 118 Pa. 192; In Ruan St., 132 Pa. 257; Frost v. Cherry, 122 Pa. 417.

OPINION BY MR. JUSTICE WILLIAMS, January 17, 1896:

The common school system of this state is the creature of the school law of 1854. It was intended to cover the state, to be administered under general laws, and to be fostered and sustained in part at least by public moneys paid out of the state treasury. The scheme contemplated the division of the state into school districts upon the line of existing civil divisions. Each township, borough and city was made a separate school district with the right to elect its own board of school directors. In cities divided into wards each ward was made a sub-district with power to elect a board of directors, to the care of which the schools and school property therein was committed, subject to a supervisory control by a central or city board composed of one member from each of the ward boards within the city. In the city of Pittsburg, this general system was somewhat modified by a local law passed in 1855. It was again modified by another local law in 1869. From the last date, 1869, down to the present time, the schools in the several districts or sub-districts in the city of Pittsburg have been regulated and conducted in accordance with the law as it then stood. The system was well understood, was easy of management and secured to the people of each district that measure of local control over the schools which it was the purpose of the general law of 1854 to give. In 1895 the legislature undertook to overturn this system and substitute another in its stead. For this purpose an act was passed entitled " An act to establish and regulate the affairs of school districts and sub-school districts in cities of the second class, and to repeal all local and special laws inconsistent therewith."

The draughtsman of this act seems to have been apprehensive that it might not be held effective for the repeal of the local acts of 1855 and 1869 which were applicable not to cities of the second class, but to the city of Pittsburg by name; and for this reason, no doubt, another act was drawn, and introduced into the legislature simultaneously with the one just referred to, providing only for the repeal of the two obnoxious local laws, those of 1855 and 1869. These bills made their journey through both houses pari passu, and reached the executive and received his approval upon the same day. What is their effect upon the common school system of Pittsburg? The court below held that the first of these acts was unconstitutional and void, but that the second or repealing act was valid.

This led to the conclusion that the old system was effectually overturned and that no new one had been provided to take its place, and it left the boards of school directors and the schools under their care in a state of perplexity and confusion calculated to impair if not practically to destroy their usefulness. This appeal brings the conclusions of the learned judge before us for consideration.

It is contended that he was in error in holding the act that provides a new system for cities of the second class to be local and therefore unconstitutional, as its provisions include all the members of the class of cities to which it relates. It is true that the classification of cities was upheld in Wheeler v. The City of Philadelphia, 77 Pa. 338, but the object of classification is very clearly stated in the act of 1874 that provides for it. It is to facilitate municipal government. The common school system of this state rests on the general law of 1854, it is largely supported by state appropriations, and is under the general supervision of a state superintendent. School directors are by no means municipal officers. They are not invested with any of the municipal powers nor are they charged with the performance of municipal functions. An attempt to regulate the affairs of school districts by local or special laws is expressly forbidden by the constitution in art. 3, sec. 52, and until the common schools can be regarded as a part of the municipal machinery necessary for the government of cities, this act which relates to cities of the second class must be treated as local in its character. Many efforts have been made to make the classification

of cities for municipal purposes serve as a warrant for local legislation on subjects having no possible relation to municipal government, but this court has uniformly refused to sanction them.  In Davis v. Clark, 106 Pa. 377, the act under consideration attempted to regulate mechanics' liens with reference to the class of cities in which the building against which the lien was filed might be located.  In Scowden's Appeal, 96 Pa. 422, the effort was to fix the place at which sessions of the several courts should be held for the trial of causes in counties having a certain number of cities of a given class, and at a given distance from the county seat.  In Weinman v. The Railway, 118 Pa. 192, an attempt had been made to regulate street railways according to the classification of the city in which they might happen to be located.  In Ruan Street, 132 Pa. 257 and in Wyoming Street, 137 Pa. 494, the manner in which the right of eminent domain should be exercised, and the power of the legislature to establish a different system for fixing the value of property taken in different classes of cities was considered. The right of the legislature to provide different modes for the collection of school and county taxes in different cities has been under examination in many cases.  In every instance we have asserted the same rule, saying that the effect of classification must not be carried beyond its purpose as declared in the original classification law, and that a law relating to any other subject though embracing all the cities of any given class, or of all the classes into which cities are divided, is local and unconstitutional if the subject be one upon which local and special legislation is forbidden.  The regulation of the affairs of school districts is such a subject.  It is distinctly named in the list of subjects enumerated in the fifty-second section of art. 3 upon which " The general assembly shall not pass any local or special law."

The precise point was under consideration in the appeal of the City of Scranton School District, 113 Pa. 176, and we there held that " if an act regulating the affairs . . . . of school districts either produces or may produce local results it offends against article third of the constitution and is therefore void."

The act now before us was passed to establish a local system. Its results were intended to be local, and only local.  They can by no possibility be anything but local. · It is therefore squarely

within the rule laid down in the appeal of the Scranton School District, as well as squarely within the words of the constitutional prohibition. It is beyond the power of the legislature to enact, and absolutely void. The learned judge of the court below was right in his conclusion upon this subject, and the assignments of error relating to this question are overruled. We come now to consider the other or repealing act. This is a local law passed to effect the repeal of the local acts of 1855 and 1869. Such a law is not necessarily within the constitutional prohibition. To hold that it was would make the road to uniformity much more difficult than was intended. The repeal of local laws is ordinarily made to open the way for the operation of general laws within the territory from which the local law had previously excluded them. Still it is true that such a law is local within the meaning of sec. 55 of art. 3. Particularly is this true when the object of the repealing act is not to make way for a general law but for another local one. In such case it is such a local law as the constitution declares shall not "be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected shall be situated." It is conceded that no notice of an intention to apply for the passage of a law repealing the local acts of 1855 and 1869 was ever published in the city of Pittsburg. If this fact was not admitted our question might not be as free from difficulty as it now is. It is admitted. It was so treated in the court below. We have then a local law passed to repeal one local law in order to make way for another.

It affects the people of the city of Pittsburg. They have a right to notice of the intention to apply for it. It now appears that without notice the parties interested procured the passage of this local law in plain violation of the constitution. If it appeared that this question had been considered by the legislature and that body had decided that sufficient notice had been given, or if the committee to which the bill was referred had reported that the constitutional requirement as to notice had been complied with, we might feel ourselves concluded by such action. But there is not the faintest suggestion to be found anywhere that the subject of notice was ever before the mind of the legislature or attracted the attention of the promoters of the bill. If we should hold that, as a general rule in the absence

of any recital or proof upon the subject, notice should be presumed, yet the presumption cannot prevail when it is a conceded fact in the case that no notice was given.  The only question then presented is over the validity of an act passed in the face of a clear and positive constitutional prohibition.  The learned judge of the court below was of opinion that as the form and manner of publishing notice was prescribed by the act of 1874, the legislature of 1895 having equal power in the premises was not bound by the directions of its predecessor but might disregard them at its pleasure.  The power of the legislature to repeal the act of 1874 cannot be doubted, but it had not been exercised.  When this act was introduced into the legislature and when it came up on its final passage, the act of 1874 was in full force, and the citizens of Pittsburg had a right to rely upon the observance of its provisions.  The point made however does not relate to a compliance with the forms of the act of 1874, but with the substance of the constitutional provision that makes notice in the locality, and by publication, an indispensable prerequisite to the passage of a local law.  The legislature of 1895, though not bound by the directions of its predecessor was bound by the fundamental law, and its power to pass the repealing act depended on compliance with its mandate.

We cannot agree therefore with the learned judge in regard to the validity of the repealing act.  It is invalid.  The acts of 1855 and 1869 are in full force, and the system of schools, school districts and school directors built upon them in the city of Pittsburg has undergone no change whatever.  The decree of the court below must therefore be reversed, and the record remitted, in order that the court below may proceed to determine the questions before it as though the legislation of 1895 relating to this subject had never been passed.

The costs of this appeal should be paid by Lincoln School District.