# Beltz, Appellant, *v.* Pittsburg.

*Municipalities—Classification—Population.*

Classification of muncipalities in Pennsylvania rests on the single element of population, and the legislation based on such classification is limited to the organization and administration of the city goverment, to the regulation of municipal affairs, and of matters under municipal control, to the number, character, powers and duties of the officers employed in such affairs, and to the exercise generally, of the corporate powers vested in the municipality.

*Municipalities—Classification—Health regulation—Act of June 7, 1901, P. L. 493.*

Legislation designed to guard against disease by establishing or promoting the sanitary conditions most favorable to health, must be deemed within the purposes for which the classification of cities is permitted.

The Act of June 7, 1901, P. L. 493, entitled, "An act providing for the examination licensure and registration of persons, firms or corporations engaged or engaging in the business or work of plumbing or house drainage, and prescribing certain rules, regulations and requirements for the construction of plumbing, house drainage and cesspools in cities of the second class, and imposing fines, penalties and forfeitures for violation thereof," is constitutional.

Argued May 5, 1904.   Appeal, No. 110, April T., 1904, by plaintiff, from order of C. P. No. 1, Allegheny Co., Dec. T., 1903, No. 113, affirming judgment of justice of the peace in case of John Beltz v. City of Pittsburg.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Appeal from justice of the peace.

The material portions of the justice's transcript were as follows:

" And now September 16, 1903, at 3 o'clock P. M. parties appear.   Issac Carver, chief plumbing inspector, sworn and claims that defendant violated an act of assembly approved June 7, 1901, while erecting four new houses, No. 7010 Kedron street, city of Pittsburg, by failing to put in proper material, etc., as required by said act of assembly, also failing to obtain the proper permit from the department of public safety of said city.   James H. Deer, plumbing inspector, sworn for the plaintiff and proof made of the defendant being notified to comply with the said act of assembly.   Whereupon after hearing the evidence the defendant was adjudged guilty, and was fined ten dollars and cost of suit.   And now September 16, 1904, certiorari, and now September 16, 1903, fine and costs paid."

The court affirmed the judgment of the justice of the peace.

*Error assigned* was in affirming the judgment of the justice of the peace.

*J. McF. Carpenter*, for appellant.—The underlying principle of all the cases is that classification with the view of legislating for either class separately is essentially unconstitutional, unless a necessity therefor exists; a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless and detrimental to the others: Ayars's Appeal, 122 Pa. 266; Com. v. Gilligan, 195 Pa. 504; Weinman v. Pass. Ry. Co., 118 Pa. 192.

Conceding that legislation for the preservation of the public health may be necessary, and that legislation may be wholly

inapplicable to the country while entirely suited to the needs of cities, it surely cannot be contended that as between cities of the first and second classes it is necessary to define how and of what material buildings shall be erected, or what degree of technical knowledge and skill mechanics must possess, and that cities of the third class can adopt a go-as-you-please system.

The act now before the court undoubtedly relates to persons and things of a class and not to particular persons and things as a class and so falls under constitutional condemnation. It relates, not to plumbers as a class, but to those only who may wish to engage in the business or work of plumbing in cities of the second class. It relates, not to plumbing and house draining generally, nor to the general construction of houses, but is confined to cities of the second class, thereby perpetually excluding from its operation cities of the first class, and is restricted to a particular occupation, a single class of mechanics.

*L. S. Livin,* with him *W. B. Rodgers,* for appellee.—The act of 1901 is constitutional: Wheeler v. Philedelphia, 77 Pa. 338 ; Shenk v. Pittsfield Club, 11 Pa. Superior Ct. 84 ; Weinman v. Pass. Ry. Co., 118 Pa. 192.

OPINION BY SMITH, J., July 28, 1904 :

The power of the legislature to classify the cities of the commonwealth, and to legislate for each class separately, is too well settled to be questioned. This power is based on " a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others :" Ayars's Appeal, 122 Pa. 266 ; Weinman v. Railway Co., 118 Pa. 192 ; McCarthy v. Com., 110 Pa. 243. The proper basis of such classification is population, and this is the only legitimate basis for the classification of cities and counties : Wheeler v. Philadelphia, 77 Pa. 338 ; Kilgore v. Magee, 85 Pa. 401 ; Com. v. Patton, 88 Pa. 258 ; Scowden's Appeal, 96 Pa. 422.

Not only does classification rest on the single element of population, but the legislation based on classification is limited in scope. It is only " for the purposes of legislation regulating their municipal affairs, the exercise of certain corporate powers,

and having respect to the number, character, powers and duties of certain officers thereof" (Act of June 25, 1895, sec. 1, P. L. 275), that the legislature has divided cities into three classes. Legislation for any of these classes must relate to a subject within the purposes of classification as thus defined; to the organization and administration of the city government, to the regulation of municipal affairs, and of matters under municipal control, to the number, character, powers and duties of the officers employed in such affairs, and to the exercise, generally, of the corporate powers vested in the municipality; and it must apply to all cities of the designated class. If it relates to subjects not included in the purposes of classification, or excludes any city within the class mentioned, it falls within the constitutional prohibition of local or special legislation, and is void: Weinman v. Railway Co., supra; Ayars's Appeal, supra; Ruan Street, 132 Pa. 257; Wyoming Street, 137 Pa. 494; Scranton v. Whyte, 148 Pa. 419; Chalfant v. Edwards, 173 Pa. 246; Lloyd v. Smith, 176 Pa. 213; Blankenburg v. Black, 200 Pa. 629. In the cases hereinbefore referred to, and the authorities therein cited, will be found illustrations of legislation both within the purposes of classification and outside those purposes.

Though classification is based on necessity, this is not to be understood as an absolute necessity, admitting of no alternative, but as a relative necessity, involving merely great and manifest public advantage or convenience. Since the conditions in a city of one million inhabitants demand regulations, on many subjects, that would be needless or burdensome in a city of ten thousand, the necessity for a classification between the extremes of population is unquestionable. And since many of the municipal regulations required in a city of either of these two classes would be unsuited to cities having a population largely below that of the former yet much above that of the latter, there is an equal necessity, arising from considerations of public convenience, for an intermediate class. Proceeding on this view, the legislature, by the Act of May 23, 1874, P. L. 230, divided the cities of the commonwealth into three classes, and this classification was sustained by the Supreme Court, as being within the spirit if not within the letter of the constitution: Wheeler v. Philadelphia; Kilgore v. Magee, supra. The Act

of April 11, 1876, P. L. 20, amended this classification by divid-
ing cities into five classes ; and the Act of May 24, 1887, P. L.
204, made a division into seven classes.    In 1889, these classifi-
cations were pronounced unconstitutional, as not warranted by
any necessity.    " As to the number of classes created, the act
of 1874 appears to have covered the entire ground of classifica-
tion.    It provided for all existing as well as every conceivable
prospective necessity."    As to the act of 1887, " The charter
powers of the fourth to seventh classes, inclusive, are precisely
similar.    There is nothing to prevent the last four classes from
being included in the third class established by the act of 1874.
Their needs are all so similar that no charter power required
for either of them would be unnecessary or detrimental to any
of the others : " Ayars's Appeal, supra.    The Acts of May 8,
1889, P. L. 133, and June 25, 1895, P. L. 275, again fixed the
division into three classes, and each act increased the minimum
population of each class.    The validity of the present classifica-
tion, under the constitution, must be regarded as firmly estab-
lished.

It only remains to determine whether the provisions of the
Act of June 7, 1901, P. L. 493, now under consideration,
are within the purposes for which cities are legally classi-
fied.

Among subjects of municipal concern, none is more impor-
tant than the preservation of the public health.    The preven-
tion of disease by municipal authority is as clearly a municipal
function as the prevention of its spread by quarantine or
otherwise.    Legislation designed to guard against disease, by
establishing or promoting the sanitary conditions most favor-
able to health, must be deemed within the purposes for which
the classification of cities is permitted.    The regulation of the
municipal affairs of the several classes of cities, therefore, must
be held to embrace adequate statutory provisions on this sub-
ject.    There is no apparent reason why the established classi-
fication, with respect to other municipal purposes, should not
be maintained as to this.    The differences in local needs and
conditions affecting this matter, among the three classes of
cities, are as obvious as those relating to various other purposes
for which the power to legislate for a class is undeniable.    And
among sanitary conditions, few are more important than a sys-

tem of plumbing, house drainage, and sewerage which shall be safe and sufficient at every point. The establishment and maintenance of such a system requires expert knowledge and skill. Provisions calculated to insure that the work involved in the system shall be performed only by competent persons, that the materials used shall be suitable, and the methods employed adequate, obviously fall within the regulation of municipal affairs. The statutory provisions now under consideration clearly meet the constitutional requirements, and must be declared valid.

The provisions of other acts on this subject, in relation to other classes of cities, afford no guide in deciding as to the constitutionality of those now before us. That they are different from those here under consideration is nothing to the purpose. The classification of cities is based on differences of conditions and needs, implying corresponding differences in the legislation providing for them. Classification would be meaningless and nugatory if nevertheless uniformity in legislation were required. It is for the legislature to determine what differences in conditions and needs justify differences in municipal regulations, subject to judicial review as to whether the end is true classification, or special legislation disguised as classification : Lloyd v. Smith, 176 Pa. 213. If the legislative provisions are directed to any of the purposes for which classification is designed, their fitness for the purpose is to be determined by the legislature, and not by the courts.

The suggestion that the 70th section of the act makes the director of public safety the sole judge in all disputes arising under the act is evidently based on a misapprehension. That section merely relates to differences regarding construction, and in effect makes the director the arbiter between the contending parties,—substantially as differences respecting various constructions are, by contract, to be determined by the supervising architect. Section 71 provides for a judicial trial when a penalty is involved, and the present appeal arises from such a trial.

The act of 1901 follows, in purpose and plan, the Act of June 7, 1895, P. L. 135, and extends its principal provisions. This court has sustained the latter act on a similar branch of its main subject, as a proper exercise of the police power of the

state or municipal purpose, when assailed on the ground of unconstitutionality, in Shenck v. Pittsburg Club, 11 Pa. Superior Ct. 84. The Supreme Court having refused an appeal from our decision in that case, we give a like construction to the act of 1901.

Judgment affirmed.