# Estate of John Joseph Clark, a Minor.

*Statutes—Constitutional law—Decedent's estate—Cost of security.*

The Act of June 24, 1895, P. L. 248, authorizing executors and trustees to claim credit in their accounts for the cost of security purchased from trust or surety companies, is unconstitutional. The act offends against article 3, section 7, of the constitution of Pennsylvania, forbidding special legislation, in that it grants to corporations special and exclusive privileges denied to individuals.

Argued Oct. 14, 1898. Appeal, No. 8, Oct. T., 1898, by William J. McAuliffe, from decree of O. C. Phila. Co., Jan. T., 1895, No. 154, sustaining exceptions to adjudication surcharging guardian with the sum paid for premiums on surety bond. Before RICE, P. J., BEAVER, REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Exceptions to adjudication. Before the court in banc.

The facts sufficiently appear in the opinion of the court below by HANNA, P. J., as follows:

The single exception filed presents a question not raised at the hearing before the auditing judge, and therefore not antici-

pated by him nor an opportunity given for its consideration. The item of credit in the account of the guardian was not objected to by the exceptant, and therefore supposed to be conceded a proper expenditure. This matter may well have been disposed of by following Young's Estate, 7 Pa. C. C. 287, wherein the proper practice is shown to be in such case to apply to the auditing judge for a rehearing; and an exception to that which has never been ruled by him is not in accord with good practice. There the exceptions, for this and other reasons, were overruled. This is by analogy to the procedure adopted by the Supreme Court, upon appeals taken and exceptions urged for the first time in that court pending the appeal: Dyott's Est., 2 W. & S. 557; Irwin's Appeal, 5 Whart. 577; Hise's Est., 5 Watts, 157, and many subsequent cases; unless it appear after hearing that the justice and equity of the cases require it: Rees's App., 2 W. & S. 417; Kittera's Est., 17 Pa. 416. See also Readdy v. Shamokin Borough, 137 Pa. 92, and Serfass v. Driesbach, 141 Pa. 142.

And if no exception be taken to the reservation of a point at the time of its reservation, the Supreme Court will presume that it was assented to: Headley v. Renner, 129 Pa. 542; Shaffer v. Eichert, 132 Pa. 285; Wray v. Spence, 145 Pa. 399.

But to prevent the delay which would ensue should the practice adverted to be observed, and as all parties are before us and have been fully heard, we are disposed to consider the exception properly filed to an adverse ruling by the auditing judge.

The credit claimed by the guardian and allowed, as stated, without objection, is for a sum paid, upon his appointment, to a surety company for becoming his surety. It is now, however, contended that the credit should not be allowed for the reason that the act of assembly, under the provisions of which the same was so expended, is in direct conflict with the express prohibitions and provisions of the constitution of the state, and therefore unconstitutional and void. If this be the correct view, the payment was illegal and cannot be allowed out of the estate of the minor.

Corporation suretyship is another product of modern thought and ingenuity, and may be said to possess many advantages over

individual bail or security.   It is of frequent occurrence that fiduciaries are subject to great embarrassment and difficulty in obtaining the surety required by law to qualify them for the performance of their duties.   Men of business and property are frequently debarred by articles of copartnership, and others hesitate and refuse to take upon themselves a risk and responsibility against which, when once assumed, they have but too often inadequate protection.   It is therefore not surprising that administrators, executors, guardians and other trustees avail themselves of corporate resources and responsibility which by law are declared to furnish adequate security, and are then content in many instances subsequently to devolve upon the trained and experienced officials of the corporation the duties they should themselves perform.   This is especially the case should the trustee be at no expense, and the cost of obtaining the security be considered a charge upon the estate or fund in his custody or control.   Our daily experience has proved corporate security and the oversight and management by expert officers of the trust and surety companies to be highly advantageous not only to the fiduciary, but to all other parties interested, whether creditors, legatees or distributees.   While we thus concede the safety and protection afforded and the advisability of obtaining corporate suretyship, yet the corporation becomes such as a part of its business from which a revenue is anticipated by its stockholders.   A fair and reasonable compensation is naturally to be paid for the risk and responsibility assumed and services performed, but the question at once arises by whom should this compensation be paid, whether by the guardian, administrator, executor or other trustee or borne by the estate or subject of the trust.

It was presented to this court in Wilson's Est., 18 W. N. 483, upon the settlement of the account of the administrators.   The amount paid to the surety company, one per cent of the sum received, was allowed by the auditing judge as a part of the proper and necessary expenses incurred in the administration of the estate.   But exceptions to the allowance were sustained, and it was held that the administrators having voluntarily assumed their office, if they were obliged to pay for obtaining their sureties it was a personal liability and should not be charged to the estate.   No appeal was taken from this ruling.

The question again arose in Eby's Est., 2 Dist. Rep. 326, in the orphans' court of Dauphin county. There a credit was also claimed by an administrator for the sum paid a surety company for becoming his security, but, following Wilson's Estate, supra, the credit was disallowed by the court.

Again, in Miller's Est., 32 W. N. 232, the same question was again presented, but under somewhat different circumstances. There the testator appointed a nonresident as executor, and as it became necessary that security be entered prior to the grant of letters testamentary, he procured a surety company as his security. The court, adhering to the principle laid down in Wilson's Est. and Eby's Est., supra, refused to allow as a proper payment out of the estate the compensation paid to the surety. No appeal was taken in this case. But upon an appeal in Eby's Est., supra, the conclusions reached by the orphans' court of Dauphin county and by this court were fully adopted by the Supreme Court, and the appeal was dismissed: Eby's Appeal, 164 Pa. 249.

And, finally, in Pickering's Est., 4 Dist. Rep. 263, in an opinion filed April 27, 1895, the executors were disallowed the sum paid to a surety company upon their bond to enable them to obtain the proceeds of the sale of real estate.

It thus seemed to be definitely settled that, admitting the authority of executors, administrators and other fiduciaries to obtain as security the surety companies incorporated for such purposes, yet the expense incurred being for their individual benefit, convenience and accommodation, was to be borne by them individually and not by the estate or fund. If the law as thus declared should continue to be upheld by the courts, it is obvious that a very lucrative and profitable part of the business of the surety companies was in danger of diminution and loss. But this was thought to be averted by appropriate legislation. Accordingly, by the Act of June 24, 1895, P. L. 248, section 1, it was enacted: " That any receiver, assignee, guardian, committee, trustee, executor or administrator required by law or the order of any court to give a bond as such may include as a part of the lawful expense of executing his trust such reasonable sum paid a company authorized under the laws of this state so to do for becoming his surety on such bond as may be allowed by the court in which he is required to account, not ex-

ceeding, however, one per centum per annum on the amount of such bond."

Since the passage of the act the payments made to the surety companies have been thought to be legal and appropriate credits in the account of an executor, administrator, guardian and other trustee, and not until the present instance was an objection made thereto. But the question is now raised and urged that the legislature exceeded its powers and authority in thus conferring upon the surety companies a special privilege not conferred upon the citizen in his individual capacity, and the act of June 24, 1895, being in conflict with the provisions and prohibitions of the constitution of the commonwealth, is unconstitutional and therefore void. It is argued that the act is in violation of article 3, section 7 of the constitution, wherein it is declared that the general assembly shall not pass any local or special law, inter alia, " granting to any corporation, association or individual any special or exclusive privilege or immunity," etc. " Nor any local or special law providing or changing methods for the collection of debts." " Nor any local or special law authorizing the creation, extension or impairing of liens." And it was also contended that the act is unconstitutional for the further reason that it is in conflict with the last clause of section 1 of the fourteenth amendment of the constitution of the United States.

The question thus brought to our attention has been argued with great learning and ability, and after careful consideration we have reached the conclusion that the contention of the exceptant is well founded and should be sustained. Without the elaborate discussion which is warranted by the importance of the question, we think it will suffice to say that, irrespective of any other special legislation prohibited by the constitution of the state or the Federal constitution, that the act of June 24, 1895, is clearly within the prohibition that " the general assembly shall not pass any local or special law granting to any corporation, association or individual any special or exclusive privilege or immunity." The act is obviously a special law granting to corporations, viz : surety companies, a " special or an exclusive privilege " which is denied to individuals and to those trustees who have paid a company for becoming surety, while others who compensate individuals for becoming bail or surety

are refused or have not conferred upon them the same privilege. It is not necessary to doubt the right of the legislature to create corporations whose business shall be to become surety for all fiduciaries and natural persons wherever security or bail is required, but they transgress their power when they arbitrarily select such corporations and confer upon them an exclusive privilege in the business carried on by them, and thus discriminate against individuals who may assume the same risk and responsibility. Both individuals and surety companies are equally competent to become security, and there is no difference between their risk and responsibility. Yet it has never been contemplated that the compensation of an individual surety was other than an expense to be borne by the trustee personally. And while the amount expended by the trustee will not be recognized nor allowed as a proper credit in his account, yet should he select a corporation as surety the expense incurred is authorized to be deducted from the estate or fund. This is certainly such discrimination against the individual and in favor of the corporation as will render the act authorizing the same unconstitutional. Upon this subject we may refer to the recent cases of Sayre Borough v. Phillips, 148 Pa. 482, and Commonwealth v. Zacharias, 181 Pa. 126. Not only is this classification arbitrary and exclusive, but it is a privilege and immunity unreasonable. By this is meant that it is unreasonable to permit a trustee to expend the money of the trust estate in obtaining security by employing a corporation for that purpose when if he obtained a private individual to assume the same responsibility, even at a less rate of compensation, the amount thus expended will not be recognized by law as a proper expenditure, and will be charged to him personally.

Furthermore, it may be suggested that in the settlement of a decedent's estate not only the debts of the decedent, but those incurred by the executor or administrator in the settlement of the estate, such as funeral expenses, costs paid and commissions, are a lien against the real estate of the decedent, and for payment of which it may be sold. The result is that if the amount paid corporate surety is one of the legal expenses incurred, and thus made a lien against the real estate, the act of assembly now under discussion is unconstitutional for the additional reason that it conflicts with the prohibition that no local or

special law shall be passed "authorizing the creation, extension or impairing of liens." That is, no special law shall create either a new lien, extend the operation of liens already existing by force of law, or impair the effect of liens now existing by force of law.

For these reasons we conclude that the act of assembly of June 24, 1895, is so repugnant to and in conflict with the provisions of the constitution of the state respecting local or special legislation that it must be held unconstitutional, and therefore void and of no effect. Consequently any compensation paid by a fiduciary for obtaining corporate security is an expense to be borne by him individually.

The exception is therefore sustained, and the adjudication corrected accordingly.

We do not deem it necessary to discuss the unconstitutionality of the act with reference to the Federal constitution. We think it is in conflict with the constitution of the commonwealth, and this will suffice for the present purpose.

Decree sustaining exception to the adjudication of the auditing judge awarding accountant the sum of $12.00 for premiums on guardian's bond. McAuliffe, guardian, appealed.

*Error assigned* among others was sustaining exceptions awarding the accountant the sum of $12.00 for premiums on guardian's bond.

*Lincoln L. Eyre* and *John G. Johnson*, with them *Joseph Edward Murray*, for appellant.—The act of June 24, 1895, in no way abridges the right of individuals to give bonds, as such right existed at the passage of the act. It undoubtedly recognizes, by implication, the advantage of corporate suretyship over that of individuals, but we respectfully submit that if the legislative enactment is within the constitutional boundaries it must stand, even though it may seem unjust to those who believe themselves injured by it.

If the business of suretyship, in the matter of court and official bonds, is in its nature a public one in the sense in which it relates to the necessity of protecting the members of a community from unnecessary loss or inconvenience, the regulation of such business by the legislature is distinctly within its jurisdiction, and if this is conceded, then the fullest discretion must

be given to the legislative body in the means and methods which it may choose to provide for such regulation.

The decisions show that it has never been pretended that the legislature has not the right to classify in proper cases, and that when such classification is within the legislative power, it matters not how arbitrary the legislative enactment may appear to those who may feel dissatisfied with or injured by it.

As was said by Judge HAMMOND in the recent case of Guarantee Company of North America v. Mechanic's Savings Bank, 80 Fed. Rep. 766, in speaking of the modern fidelity bonds given by corporations, " While in contracts like this, the more natural attitude of a ' surety ' is assumed by the form, it is, in effect, one of insurance; and whatever indefiniteness of language or ambiguity of expression there may be, shall be resolved most favorably to the assured."

These propositions are fully sustained by the case of Commonwealth v. Vrooman, 164 Pa. 306, decided by the Supreme Court of Pennsylvania. This case would seem to be on all fours with the case at bar, and would appear to establish without qualification the particular proposition contended for, namely, that the business of suretyship, which in its recent growth and its acceptability to the community over older and more precarious methods, has become a business of insurance similar in all substantial respects to insurance against fire or life, is peculiarly subject to legislative regulation and control, and, therefore, a proper subject for the police power.

In the Vrooman case the question turned upon the constitutionality of the Act of February 4, 1870, P. L. 14, which applied to the business of fire insurance, and which went much further than the act now before this court.

The court of quarter sessions of Philadelphia county held this act to be unconstitutional upon precisely the same grounds as given by the court below in the present case. If the legislature of Pennsylvania, in the exercise of its undoubted power to regulate commerce for the general welfare of the community is of the opinion, and it matters not whether that opinion is a mistaken one, that the sale of railroad tickets by certain persons, and that the manufacture of oleomargarine, and that the business of entering bonds by individuals for a compensation are liable to be, in some instances, injurious to the interests of the com-

munity, by affording improper opportunities for fraud, and a resulting damage to property or health, it can exercise its sovereign functions by legislative enactments, by restricting, regulating or even totally prohibiting such business: Powell v. Com., 114 Pa. 266; Powell v. Penna., 127 U. S. 678.

*George Henderson* and *Thomas James Meagher*, for appellee. —A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special and comes within the constitutional prohibition: Wheeler v. Phila., 77 Pa. 338.

The determination of the character of an act as general or restricted, i. e., local or special, is for the judiciary. This subject needs no discussion. It was set at rest in Ayars's Appeal, 122 Pa. 266.

The act is not based on a regulation of the office of the surety of the specified fiduciaries.

The act is not based on a regulation of the compensation of the sureties of the specified fiduciaries.

No rule is laid down by which an impartial execution of the act can be secured. It confers a naked and unrestrained power to impose or not to impose this charge on the estate. It is at the mere will of the fiduciary, with no guiding principle. See Yick v. Hopkins, 118 U. S. 356, whence these expressions with respect to this phase of the act's arbitrariness are derived. See also Parker, 131 U. S. 221.

The act is not based on a regulation of the compensation of the company sureties of the specified fiduciaries.

The act is forbidden.

The general assembly shall not pass any local or special law authorizing the creation of liens.

It is well settled that the fiduciaries specified in the act are entitled to a lien on their fiducial estates for disbursements properly made by them in the administration thereof. There is palpably no difference in this respect among those mentioned in the statute; a trustee is on the same footing as a committee, a receiver as an executor, and so on.

The general assembly shall not pass any local or special law affecting the estates of minors or persons under disability except after due notice to all parties in interest to be recited in the special enactment.

The general assembly shall not pass any local or special law providing methods for the collection of debts.

The general assembly shall not pass any local or special law granting to any corporation, association or individual any special or exclusive privilege or immunity.

The act violates that clause of the 1st section of the fourteenth amendment to the federal constitution, which provides that no state shall " deny to any person within its jurisdiction the equal protection of the laws."

This act is not a police law. The doctrines (*a*) that a police law must have a subject-matter which relates to the welfare of society; (*b*) that its provisions must be reasonably adapted to attain that welfare, and (*c*) that it must not contravene the provisions of the constitutions under which it is to operate, are not denied by the appellant. These propositions are familiar law and are amply sustained by the following selections from the authorities: Railway Co. v. Jacksonville, 67 Ill. 37; Jacobs's Application, 98 N. Y. 98; Mugler v. Kansas, 123 U. S. 623; Lawton v. Steele, 152 U. S. 133; Com. v. Zacharias, 3 Pa. Superior Ct. 271; Com. v. Zacharias, 181 Pa. 126.

That it would be competent for the legislature in the exercise of its police power to prohibit individuals from acting as sureties for the specified fiduciaries, may be, for the present purpose, conceded; but that, while continuing to permit both individuals and companies to act as such, it can, under that power, authorize the grant of compensation to only one of them after their equal labor and their equal responsibility, the bases of surety compensation have been incurred, is denied: Commonwealth v. Vrooman, 164 Pa. 306.

The consideration of the nullity of the present enactment can be no more fittingly concluded than by referring to the previously quoted language of Mr. Justice WILLIAMS, in Commonwealth v. Zacharias, supra :

" This is not protection to the public, but rank injustice to individuals. . . . It is an arbitrary gift to one and an arbitrary denial to another."

OPINION BY W. D. PORTER, J., July 28, 1899 :

The appellant, as guardian of John Joseph Clark, a minor, filed an account of his trust in which he claimed credit for the sum of

$12.00 paid by him to the City Trust, Safe Deposit and Surety Company for becoming his surety upon the bond which he was by law required, as such guardian, to give. The orphans' court sustained an exception to said item and the credit was disallowed, which order of the court the guardian now assigns for error.

The only question passed upon by the court below and argued here was the constitutionality of the Act of Assembly of June 24, 1895, P. L. 248, as applied to bonds executed after the approval of the act, and sums paid to sureties on such bonds and allowed by the court in which the trustee is required to account. All other questions growing out of the facts in this particular case are to be taken as expressly waived. The court below held the act to be unconstitutional, and, in order to determine the soundness of that conclusion, we must consider the purpose, scope and effect of the legislation in connection with the conditions to which it applied. The legislation enacted " That any receiver, assignee, guardian, committee, trustee, executor or administrator, required by law or the order of any court to give a bond as such, may include as a part of the lawful expense of executing his trust, such reasonable sum paid a company, authorized under the laws of this state so to do, for becoming his surety on such bond as may be allowed by the court in which he is required to account, not exceeding, however, one per centum per annum of the amount of such bond." This act applies only to cases where the guardian or other trustee is by law required to give a bond with surety to be approved by some court, to which the principal must account for the faithful execution of the trust. Originally only individuals were under the law competent to act as sureties in such proceedings, but the legislation of recent years has rendered certain corporations, commonly called surety or trust companies, eligible to serve in that capacity. The form of the obligation, the nature and extent of the liability assumed by and the manner of its enforcement against the surety have remained unchanged. The qualifications and responsibilities of individual sureties have been in nowise varied and the corporations have simply been admitted to the class of competent sureties. Prior to the legislation in question, individual and corporate sureties stood, in all respects, upon an equal footing. The bond and the sufficiency of the sureties were, and still are, subject to the scrutiny and approval

of the court.  The sureties, whether individuals or corporations, might, and still may, lawfully make a contract with their principal and receive from him a reasonable compensation for the responsibility incurred by the obligation.  But it was decided, in Eby's Appeal, 164 Pa. 249, that the trustee could not charge the estate for services rendered or time and money expended in procuring the bond which, as trustee, he was required to give.  It was no doubt to escape the consequences of this decision that legislative aid was sought and the act now under consideration was the result.

The bonds to which the legislation relates are important incidents in the collection, administration and distribution of estates ; they are given to enable the principal obligor to hold a position of trust and to secure the proper performance of the duties which pertain to it.  The act only takes effect when the law positively requires that a bond with surety be given, or the court legally exercises the power to require such a bond, and when the trustee is required to account to the court.  In other words, it only applies to bonds legally required in a judicial proceeding.  It is not necessary in this case to consider whether or not the legislature has the power to require that any function by law made necessary in any judicial proceeding shall be discharged by a private corporation, to the exclusion of citizens of the commonwealth.  The act of June 24, 1895, did not attempt to exclude individual citizens from becoming sureties in such proceedings, it left them equally qualified with corporations.  The form of the obligation, the liability thereunder and the mode of enforcement, as to the individual citizen and the corporation, remain the same.  The sufficiency of the surety is still subject to the approval of the court.  So far as the security of estates was concerned, there was absolutely no change wrought by this legislation.

The only effect of the legislation was to establish a distinction between individuals duly qualified under the law to become sureties and corporations so qualified.  It made no pretentions to the protection of public interests or the preservation of estates.  The act simply provided that the trustee might include, as a part of the lawful expenses of executing his trust, a reasonable sum paid to a corporation for becoming his surety, while, if he paid a like amount to a duly qualified individual for per-

forming the same service and incurring the same responsibility, he could not include it as a part of the lawful expenses of the execution of his trust. In short, this legislation left individual and corporate sureties upon an equal footing as to the qualifications required and liability incurred; but it provided that if the corporation received payment for becoming surety the amount should be taken out of the trust estate, as a part of the legal expenses of its administration, while if an individual, equally qualified to become such surety, lawfully received payment for so doing, no part of the amount so paid by the trustee could be taken out of the trust estate. In other words, money paid to a corporate surety is a part of the lawful expense of executing a trust, and may be taken out of the estate, while money paid to an individual surety is not such lawful expense and must come out of the pocket of the trustee. This act discriminates between trustees who have performed the same service and complied with all the requirements of the law, in that it allows to those who have a corporation for surety the amount paid the surety, in addition to their compensation for services as trustees, while it denies such additional allowance to those whose sureties are private citizens; it discriminates, without reason, as between estates which have been administered in strict accordance with law, in that it subjects some to a charge from which others are exempt; and, finally, it makes a discrimination between equally qualified sureties, making the compensation of a corporation a charge upon the estate and denying that advantage to the compensation of an individual surety. This is not such a regulation of a business, under the police power of the state, as was sustained in Commonwealth v. Vrooman, 164 Pa. 306. It is not a prohibition of an injurious business, nor an attempt to regulate a lawful one. It is an undisguised attempt to give the corporation an advantage over the private citizen in an undertaking in which each is equally qualified under the law to engage, and that the business is closely connected with the administration of justice does not detract from the objectionable character of the statute. Had the act allowed the reasonable charges of all duly qualified sureties, as a part of the legal expenses of execution of the trust, to be taken out of the trust estate, there could have been no doubt of its validity: Sayre Borough v. Phillips, 148 Pa. 482. This act makes a dis-

crimination between equally qualified parties, giving to one a privilege and advantage, in the judicial administration of trust estates, which is denied to the other. It is a discrimination made between those who are equal under the law. This is not protection to the public, but rank injustice to individuals. It is an arbitrary gift to one and an arbitrary denial to another, which cannot be upheld, for it offends against that clause of article 3, section 7, of the constitution of Pennsylvania, which forbids the general assembly to pass any local or special law, " Granting to any corporation, association or individual any special or exclusive privilege or immunity: " Scowden's Appeal, 96 Pa. 422; Ayars's Appeal, 122 Pa. 266; Wyoming Street, 137 Pa. 494; Commonwealth v. Zacharias, 3 Pa. Superior Ct. 264; 181 Pa. 127. The suggestion that this legislation may be sustained, upon the ground that the liability assumed by the modern surety company is different from that of an individual surety, has no foundation in fact; there is in Pennsylvania no difference in the liability of the two groups of qualified sureties. The bond is not a mere ordinary business transaction of the parties, the necessity for its execution grows out of the requirements of the law, which, having assumed control of an estate, proceeds to administer it through the courts. An administrator or other officer, charged with the execution of the trust, is required to give bond with surety, the qualifications of the surety are fixed by law or order of the court, and the surety, whether an individual or a corporation, must possess the qualifications required, and assume the responsibilities imposed by law. Such sureties are entitled to equal privileges and immunities. The conclusion of the learned court below seems unassailable.

Judgment affirmed.